Richard A. ASH

v.

GAF CORPORATION.

Civ. A. No. 82–1487.

United States District Court, E. D. Pennsylvania.

July 9, 1982.

---

**3.** The federal defendants have not argued in their motion to dismiss that review of their

action under the APA is precluded. *See* 5 U.S.C. § 701(a).

90

Cletus P. Lyman, Philadelphia, Pa., for plaintiff.

John G. Harkins, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

Plaintiff Ash alleges that GAF has violated Rule 14a–3(b), 17 C.F.R. § 240.14a–3(b), promulgated by the Securities and Exchange Commission ("Commission") under Section 14(a) of the Securities and Exchange Act of 1934 ("Act"), 15 U.S.C. 78n(a). Plaintiff complains that a third-class mailing of the annual report, four (or five) days in advance of a proxy solicitation, does not satisfy the requirement of Rule 14a–3(b) that the annual report "precede" the proxy solicitation and statement issued for the purposes of an annual meeting at which directors are to be elected.

Defendant GAF moves for summary judgment, arguing that there are no material facts at issue, that plaintiff suffered no injury, that the question is moot since the election has been held, and that, therefore

as a matter of law, judgment should be entered in its favor.

The facts and averments are the following: In anticipation of its annual meeting, GAF began the process of mailing copies of its annual report to its stockholders. Some were sent on March 16, 1982. Others were sent on March 17, 1982. They were sent by third-class mail. According to filed affidavits, the reports were mailed from Paramus, New Jersey. On March 21, 1982, GAF then mailed its proxy statement, proxy solicitation, and a cover letter, dated March 24, 1982, from Jesse Werner, chairman and chief executive officer of GAF, which urged a prompt return of the proxy solicitation. This second mailing by first-class mail was also sent from Paramus, New Jersey. On April 27, 1982, the annual meeting was held as scheduled, and a slate of directors proposed by the board of directors was elected at an uncontested election and the selection of auditors was approved.

Plaintiff Ash alleges in his complaint that he received his proxy solicitation on March 23, 1982, and his copy of the annual report on March 25, 1982—a reverse sequence from the order in which they were sent. Plaintiff has submitted material (and is willing to produce testimony from officials of the U.S. Postal Service) to show that the normal time required for the delivery of third-class mail is ten to fourteen days. For this reason, he contends that solicitations sent by first-class mail, albeit after the third-class mailing of the annual report, would be expected to arrive before the report. I have no reason for purposes of this motion not to accept these facts and averments.

I should make clear from the outset what is not at issue in this case. There is no need to interpret Rule 14a–3(b) in light of the language of Rule 14a–3(a).[1] Rule 14a–3(a) refers only to the relationship of written proxy statements and solicitation requests. In this case the proxy statement was "furnished" concurrently with the solicitation request since they both arrived in the same envelope. For this reason, I need not dwell on the meaning of the verb "furnish," as plaintiff suggests.

Neither is the issue clearly moot, as defendant argues. Even though the election has already occurred, if the damage done to corporate suffrage is sufficient, a federal court must consider applying those remedies necessary to redress the injury. *J.I. Case v. Borak,* 377 U.S. 426, 433–434, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964).

Although there have been some few passing discussions of Rule 14a–3(b), there has been no judicial decision based on it. However, there have been a number of significant appraisals of the scope and intent of Section 14(a) of the Act and of other rules designed under that section by the Commission to implement its underlying logic and purpose. Most notable have been the Supreme Court rulings on cases concerned with Rule 14a–9, the bar to the use of false or misleading proxy statements.

Section 14a has been held to have a prophylactic purpose. It is a means of preventing "management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation." *Borak,* 377 U.S. at 431, 84 S.Ct. at 1559. *See also TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 448, 96 S.Ct. 2126, 2131, 48 L.Ed.2d 757 (1976). An equally important purpose (separable from the first) is the safeguard of the corporate suffrage of shareholders. Section 14(a) "was intended to promote 'the free exercise of the voting rights of stock-

---

1. Rule 14a–3 Information to be Furnished Security Holders

   (a) No solicitation subject to this regulation shall be made unless each person solicited is concurrently furnished or has previously been furnished with a written proxy statement containing the information specified in Schedule 14A.

   (b) If the solicitation is made on behalf of the management of the issuer, and relates to an annual meeting of security holders at which directors are to be elected, each proxy statement furnished pursuant to paragraph (a) shall be accompanied or preceded by an annual report to security holders as follows:

   . . . .

   17 C.F.R. § 240.14a–3(a–b)

holders' by ensuring that proxies would be solicited with 'explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.' " *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 381, 90 S.Ct. 616, 620, 24 L.Ed.2d 593 (1970) (quoting H.R. Rep. No. 1383, 73rd Cong., 2d Sess. 14 (1934); S. Rep. No. 792, 73d Cong., 2d Sess. 12 (1934)). *Accord TSC Industries,* 426 U.S. at 444, 96 S.Ct. at 2130.

In defining the right of corporate suffrage, the Supreme Court found a private right of action for those appropriately placed to sustain injury. "The injury which a stockholder suffers from corporate action pursuant to a deceptive proxy solicitation ordinarily flows from the damage done the corporation, rather than from the damage inflicted directly upon the stockholder. The damage suffered results not from the deceit practiced on him alone but rather on the stockholders as a group." *Borak,* 377 U.S. at 432, 84 S.Ct. at 1560. Following this logic, courts have held that, as is the case here, a nontendering shareholder may complain derivately of injury to the target company. *Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 596 (5th Cir. 1974) (interpreting Section 14(e)).

■ The showing of injury is not by itself sufficient. Not all corporate missteps lead necessarily to corporate liability, even when it can be shown that rules promulgated under Section 14a have not been obeyed with care and attention. Misstatements or omissions must not only be material but also must be significant before they can be considered to permit a cause of action against the corporation. "[A] cause of action cannot be established by proof of a defect so trivial, or so unrelated to the transaction for which approval is sought, that correction of the defect or imposition of liability would not further the interests protected by § 14(a)." *Mills,* 396 U.S. at 384, 90 S.Ct. at 621.

■ Recently, the Supreme Court, re-emphasized the required relationship between breach and injury. In addition to a showing that the proxy rules have been materially breached, "[t]he plaintiff must also show that he was injured and prove damages." *Parklane Hosiery v. Shore,* 439 U.S. 322, 325, n. 2, 99 S.Ct. 645, 648, n. 2, 58 L.Ed.2d 552 (1979). I take this to mean that not only the breach but the injury and the resulting damages must be real not fancied. The injury claimed must not result merely from a technical misadventure; it must undermine the purposes upon which the rule is based and actual damage must be susceptible to proof. Generally in actions brought under Section 14(a) and the rules promulgated pursuant to that section, courts in this circuit, as well as in other circuits, have rejected the principle that a violation of the rules is sufficient in itself. Something more must be shown: that the integrity of the election was impaired. *Malhas v. Shinn,* 597 F.2d 28, 31 (2nd Cir. 1979). *See Ash v. LFE Corporation,* 525 F.2d 215, 219 (3rd Cir. 1975). *See also Maldonado v. Flynn,* 597 F.2d 789, 796 (2nd Cir. 1979).

Helpful as *Borak, Mills* and *TSC Industries* are as glosses to Section 14(a) of the Act, in this case their reach is limited. They are based upon interpretations of section 14(a) drawn in the light of Rule 14a–9. Rule 14a–9, directed at safeguarding stockholders from false and misleading proxy statements, is at the heart of the Act. The rule was designed to protect stockholders when they must endorse those explicit transactions that have the potential of altering the value of their property rights. "Corporate suffrage" is therefore not an abstract concept, importing principles of political equity into the corporate forum. It is singularly economic in its purpose and requires a straightforward and pragmatic analysis. For this reason, although the Supreme Court has found that Rule 14a–9 and Section 14(a) contain the guarantee of suffrage and the principle of deterrence, it has imposed a heavy burden on plaintiffs: the burden of proving the materiality of the defect as it might reasonably have been assumed to have affected the judgment of the stockholders, *Mills,* 396 U.S. at 384, 90 S.Ct. at 621; *accord TSC Industries,* 426 U.S. at 448, 96 S.Ct. at 2131, and the burden

of showing actual injury and proving actual damages, *Parklane Hosiery,* 439 U.S. at 325, n. 2, 99 S.Ct. at 648, n. 2.

But, of course, the case here is not brought under Rule 14a–9 but is brought under Rule 14a–3(b). The latter rule is less central to the economic interests of the stockholders than is the former. A technical misapplication (if such were arguably the case) would not normally jeopardize the property rights and concerns of stockholders. Important as annual meetings, elections and the surrounding procedure are, something less is at stake than the immediate jeopardy to stockholder property, as was true in the decision to merge considered in *Borak* and *Mills* or the decision to accept a corporate takeover and liquidation of assets at issue in *TSC Industries.*

In the few cases that touch on Rule 14a–3, the courts have found a higher burden of proof than would be required under the now conventional analysis given Rule 14a–9. One court in this circuit explicitly distinguished the analysis required for Rule 14a–3 from that required for Rule 14a–9 under *Mills. Dillon v. Berg,* 326 F.Supp. 1214, 1234–35, n. 31 (D. Del.), aff'd, 453 F.2d 876 (3rd Cir. 1971). In considering the question, that court stressed the need for a high burden of proof, "a 'but for' standard," citing the position of other courts, especially the court in *Kaminsky v. Abrams,* 281 F.Supp. 501, 506 (S.D.N.Y. 1968). Other courts since then have followed this position.

> Notwithstanding [a] violation of the proxy rules, plaintiff is entitled to no relief without proof of causation—that is that the violation reasonably could be thought to have effected [sic] the outcome of the vote. See *Dillon.* . . . In the cited footnote the Court pointed out the distinction between a violation of Rule 14a–3, which is of present concern, and a violation of Rule 14a–9, which the U.S. Supreme Court had before it in *Mills.* . . .

While in the latter case it was held that under Rule 14a–9 a material misstatement or omission in a proxy statement, without more, constituted a sufficient showing of a casual relationship between the violation and the injury which plaintiff claimed, *Dillion* [sic] . . . held that this was not true in the case of an omission which violated Rule 14a–3(a). . . .

*Ash v. Brunswick Corporation,* 405 F.Supp. 234, 247 (D. Del. 1975). *Accord Jacobs v. Airlift Intern, Inc.,* 440 F.Supp. 540, 543 (S.D. Fla. 1977); *Lewis v. Dansker,* 68 F.R.D. 184, 195 (S.D.N.Y. 1975). Given the heightened burden of proof which the plaintiff must meet in this case, even after accepting all the alleged facts as undisputed, the plaintiff falls far short of satisfying the "but for" standard.

The language of Rule 14a–3(b) is ambiguous. The annual report may be said to have "preceded" the proxy statement and solicitation request since it was placed in the mail before the statement and request. Conversely, if precedence depends upon arrival, it may be said that in at least one instance, and no doubt in others, the report did not precede the statement and solicitation but arrived after them. Nevertheless, I am left with the language of the rule and conclude that "precede" only requires that the soliciting corporation send the annual report in advance of the solicitation. If the Commission had wished to command that the report be in the stockholder's hand at the same time as the proxy solicitation it would have said "furnished," as it did elsewhere in the Rule.[2] Considering this, a finding of liability would stretch the facts beyond those facts presented in the record.

A federal court hearing an action brought under Section 14a must sit as a court of equity using "the sound discretion which guides the determinations" of such courts. *Mills,* 396 U.S. at 386, 90 S.Ct. at 622. Remedies, even if permissible, may not be ap-

---

**2.** I am not unaware of the Security Exchange Commission's advisory interpretation of Rule 14–3(b) in which it said that the purpose of the rule is not satisfied when an annual report is sent by fourth-class mail while the solicitation is simultaneously sent by first-class mail. Sec. Ex. Act Rel. 7078 (1963). While the interpretation is suggestive, given the facts of this case, it is not persuasive.

propriate or, if appropriate, must be shaped with an eye to fairness, balancing "public interest and private needs as well as ... competing private claims" *Id.* at 386, 90 S.Ct. at 622 (quoting *Hecht Co. v. Bowles,* 321 U.S. 321, 329–330, 64 S.Ct. 587, 591–592, 88 L.Ed. 754 (1944)). Equally, statutory policy does not require "the court to unscramble a corporate transaction merely because a violation occurred." *Mills,* 396 U.S. at 386, 90 S.Ct. at 622 (quoting the Court of Appeals below, 403 F.2d 429, 436 (7th Cir. 1968)). This is especially so if the remedy serves neither the public interest nor the collective interests of the group of stockholders in the plaintiff's position.

The remedies suggested by plaintiff demonstrate why it is inadvisable to raise the status of this rule to that of a rule like Rule 14a–9. Invalidating an uncontested election would serve no useful purpose and might create real injuries to the corporate interests of the stockholders. Requiring GAF to use first-class mail in the future for its annual report goes further than the Commission cared to go in formulating its regulations and imposes new expenses that will indirectly be charged to the shareholders by way of their ownership in the corporation. Requiring that GAF mail its annual report thirty days in advance of the proxy solicitation will not alter materially plaintiff's argument since, as he admits, eight percent of those sent annual reports in the third-class mail will never receive them, no matter how much time is left for delivery.

▮ I am unwilling to re-write Rule 14a–3(b); it is for the Commission to do that. The Rule says "precede," and I see no reason on the facts of this case to give greater meaning to the verb than realism demands. Courts are rightfully reluctant to grant summary judgment. *TSC Industries,* 426 U.S. at 448, 96 S.Ct. at 2131. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153–166, 90 S.Ct. 1598, 1606–1613, 26 L.Ed.2d 142 (1970). But here no facts are in dispute;

only the meaning of the law and its application are in question. Assuming *arguendo* there was a wrong, it was one so trivial that a court cannot redress it. At worst in this situation, it remains a wrong without a private remedy.[3] However, I find no wrong: GAF satisfied Rule 14a–3(b) by sending the annual report in advance of the solicitation statement and proxy request.

For these reasons, defendant's motion for summary judgment will be granted.

---

**3.** The Securities Exchange Act of 1934, 15 U.S.C. 78u(a) makes provision for the Commission to make "such investigations as it deems necessary to determine whether any person has violated ... any provision of this chapter, the

rules or regulations thereunder ..." Although plaintiff's complaint requests a remedy not suitable to the rule as promulgated by the Commission, this practice may well be of interest to the Commission.