ASH, Richard A., Appellant,

v.

GAF CORPORATION.

No. 82–1583.

United States Court of Appeals,
Third Circuit.

Argued April 11, 1983.
Decided Dec. 14, 1983.
As Amended Feb. 3, 1984.

Marvin F. Galfand (argued), Galfand & Galfand, Philadelphia, Pa., for appellant.

John G. Harkins, Jr. (argued), Marjorie Greenfield Marinoff, L. Marion K. Littman, Pepper, Hamilton & Scheetz, Philadelphia, Pa., Robert H. Beber, General Counsel, GAF Corporation, New York City, for appellee.

Before HUNTER and HIGGINBOTHAM, Circuit Judges, and GERRY, District Judge.*

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This appeal requires us to interpret and apply Rule 14a-3(b) of the Security and Exchange Commission (SEC) to determine whether GAF Corporation (GAF) violated the rule in sending its annual report to shareholders by third-class mail four to five days in advance of sending its proxy materials by first-class mail. If we find a violation, we then must decide whether that violation, without more, entitles shareholder-appellant Richard A. Ash, to relief under § 14(a) of the Securities Exchange Act. Unlike the district court, we hold that GAF violated Rule 14a-3(b) because its mailing procedure did not reasonably guarantee that the annual report to shareholders would "accompany or precede" the proxy materials. As appellant alleged insufficient

evidence of injury, however, we affirm the district court's summary judgment ruling against him.

### I.

The management of GAF, a public company registered pursuant to § 12 of the Securities Exchange Act, 15 U.S.C. § 78l, scheduled an annual meeting of security holders at which directors were to be elected for April 27, 1982. On March 16 and 17, 1982, GAF mailed its annual report to shareholders by third-class mail. On March 21, 1982, it mailed a notice of annual meeting, a proxy solicitation, and a form of proxy to the same stockholders by first-class mail. The solicitation of proxy sought authority from the shareholders to elect as directors ten persons nominated by management. The proxy materials also asked the shareholders to return their proxies promptly and gave them a revocation option, exercisable at any time prior to the election. The management-nominated slate of directors was elected on April 27, 1982. The election was uncontested.

Ash, a GAF shareholder entitled to vote at the annual meeting, filed a complaint against GAF in district court on April 2, 1982, alleging that he received his proxy materials on March 23, 1982 and his annual report on March 25, 1982—in reverse order from that in which they were sent. He also alleged that an annual report sent by third-class mail could not be expected to arrive before proxy materials sent four to five days later by first-class mail. He thus claimed that GAF violated Rule 14a-3(b) by employing an improper mailing procedure, and he sought either to have the election invalidated or other appropriate equitable relief. He never sought a temporary restraining order or a preliminary injunction to prevent the election from taking place, he never asked the SEC for an interpretation of Rule 14a-3(b), and he neither exercised his proxy nor participated in the election.

---

* Honorable John F. Gerry, of the United States District Court for the District of New Jersey, sitting by designation.

The district court subsequently granted GAF's motion for summary judgment. Ash's motion for reconsideration was denied, and he appeals. We have jurisdiction under 28 U.S.C. § 1291.

## II.

Appellant's primary contention is that the district court erred in interpreting and applying Rule 14a-3(b). That rule provides:

Information to be furnished security holders

(b) If the solicitation is made on behalf of the management of the issuer, and relates to an annual meeting of security holders at which directors are to be elected, *each proxy statement* furnished pursuant to paragraph (a) *shall be accompanied or preceded by an annual report* to security holders ....

17 C.F.R. § 240.14a-3(b) (emphasis added). He argues that the rule requires not only that the annual report be *mailed* at the same time or before the proxy materials, but that it *arrive* at the same time or before those materials. Because GAF sent its annual report by third-class mail four to five days in advance of sending its proxy materials by first-class mail, and because he received the annual report two days after receiving the proxy materials, appellant claims that the corporation violated the rule. He asks, therefore, that we prescribe a rule forbidding the mailing procedure used by GAF from being employed in future elections. He suggests that proof that GAF violated the rule, without additional proof of injury or causation, is sufficient to entitle him to relief.

The district court rejected these arguments and granted GAF's motion for summary judgment on two separate grounds: (1) it interpreted Rule 14a-3(b) merely to require that the annual report be *mailed* in advance of the proxy materials, thereby concluding that GAF did not violate the rule; and (2) it presumed that even if GAF violated the rule, appellant alleged insufficient evidence of injury and strict causation to sustain his claim for relief.

In reviewing both rationales for the district court's summary judgment order, we are guided by the standard set forth in Rule 56(c), Fed.R.Civ.P.: summary judgment is proper only when it appears "that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *See Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976). Because this case presents no disputed issues of material fact, we can uphold the district court's summary judgment ruling only if the conclusions of law on which it is premised reflect no error.

## III.

To determine whether appellant is entitled to relief, we first must define the elements of a cause of action brought under § 14(a) for a violation of Rule 14a-3(b). As there is a dearth of precedent concerning that particular SEC rule, we must turn to the language of § 14(a), and the more general body of decisional authority which surrounds it, for guidance.

Section 14(a) provides:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, *in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors,* to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

15 U.S.C. § 78n(a) (emphasis added). Its language dictates that as a prerequisite to recovery, a complainant initially must prove that his proxy was solicited in contravention of an SEC rule or regulation. In addition, he must prove injury. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 325 n. 2, 99 S.Ct. 645, 648 n. 2, 58 L.Ed.2d 552 (1979) (citing *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 386–90, 90 S.Ct. 616, 622–25, 24 L.Ed.2d 593 (1970)). Finally, he must dem-

onstrate a causal relationship between the violation of the rule or regulation and the injury. *Mills,* 396 U.S. at 385, 90 S.Ct. at 622. We will review these elements seriatim.

## A.

■ Before deciding whether GAF violated Rule 14a-3(b), we must interpret the rule. The best place to begin is with the language of the rule itself. It requires that the annual report "accompany or precede" the proxy materials. The term "accompany" means "to cause to be attended by," and the term "precede" means "to go before in order of time." Webster's New International Dictionary 16, 1942 (2d ed. 1950). Read together, the terms suggest either that the annual report should be *mailed* at the same time or before the proxy materials or that it should *arrive* at the same time or before those materials. On its face, therefore, the language of the rule is ambiguous. It raises, rather than resolves, the question of interpretation advanced by this appeal.

To resolve this ambiguity, we must look beyond the rule's language to the construction given it by the SEC and to its purpose. An interpretive release of the SEC aids us in our inquiry. There, the SEC asked:

> Does the sending of the proxy statement of the issuer by first-class mail and simultaneously sending the annual report to stockholders by fourth-class mail comply with the requirements of Rule 14a-3(b) that the proxy statement be accompanied or preceded by an annual report to stockholders ...?

It responded:

> Since it may be anticipated that an annual report sent by fourth-class mail will ordinarily not be received by the addressee at the same time or earlier than the proxy statement, it is the position of the Commission that such mailings would not comply with the Rule.

SEC Act Release No. 34–7078, Fed.Sec.L. Rep. (CCH) 24,103 (1963).

The release intimates that the act of mailing the annual report at the same time or before the proxy materials is only the first step toward compliance with the rule. It suggests that, in addition, management must either affix the same postage to both the annual report and the proxy materials, affix more costly postage to the annual report, or, if a lesser postal rate is used for the annual report, send it sufficiently in advance of the proxy materials to reasonably guarantee that the annual report will arrive first. In this way, the rule seeks to ensure that "every person solicited by the management to give a proxy in connection with an annual meeting at which directors are to be elected *shall first receive* an annual report." 2 L. Loss, Securities Regulation 2849 (Supp.1969) (emphasis added). Although the SEC apparently did not want to mandate timely *receipt* because of the uncertainties connected with postal delivery, the expense of that requirement for management, and the difficulty of proving the untimely arrival of documents, it did want to ensure, through compliance with Rule 14a-3(b), that in the ordinary case, proper mailing of the annual report would guarantee timely delivery. Our interpretation of the rule is consistent with this viewpoint.

■ Any doubt about our interpretation of Rule 14a-3(b) is put to rest by an examination of the purpose and legislative history of § 14(a). The purpose of that section is to "prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation." *J.I. Case Co. v. Borak,* 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964); *see also T.S.C. Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 448, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). The section stemmed from the congressional belief that "[f]air corporate suffrage is an important right that should attach to every equity security bought on a public exchange." *Borak,* 377 U.S. at 431, 84 S.Ct. at 1559 (citing H.R.Rep. No. 1383, 73rd Cong., 2d Sess., 13 (1934)). It "was intended to promote 'the free exercise of the voting rights of stockholders' by ensuring that proxies would be solicited with 'explanation to the stockholder of the real

nature of the questions for which authority to cast his vote is sought.' " *Mills,* 396 U.S. at 381, 90 S.Ct. at 620 (quoting H.R.Rep. No. 1383, 73rd Cong., 2d Sess., 14 (1934); S.Rep. No. 792, 73rd Cong., 2d Sess., 12 (1934)).

■ Because Rule 14a-3(b) was promulgated pursuant to § 14(a), it must be given an interpretation reflective of that section's prophylactic purpose. The rule must warn management that it cannot solicit proxies, receive shareholders' votes, and elect its selected slate of directors without first disseminating the annual report in a timely manner. In turn, it must protect the shareholders' right of corporate suffrage by requiring corporations to supply the critical business and financial information by which stockholders can evaluate the performance of management prior to voting. In sum, the rule must protect investors, preserve their role in directing the future of the corporation, and assist them in keeping management accountable to the corporate populus.

In our view, the only way the rule can accomplish these objectives and reflect the spirit of its promulgation is if we interpret it to require management not only to mail the annual report to shareholders at the same time or before the proxy materials, but to mail it in a way that will reasonably guarantee its timely arrival. To accept the district court's more broad reading of Rule 14a-3(b) would be to turn the rule on its head by making it more critical to put the annual report in the hands of the postman than in the hands of the shareholder.

Secure in our interpretation of Rule 14a-3(b), we now apply it to the facts of this case. In so doing, we conclude that GAF's mailing procedure, by which it sent its annual report to shareholders by third-class mail four to five days in advance of sending its proxy materials by first-class mail, did not reasonably guarantee that shareholders would receive the annual report at the same time or before the proxy materials. In fact, the procedure made it highly probable that shareholders would receive the annual report after they had received the proxy materials, as evidenced by the order in which appellant received his documents. We hold, therefore, that GAF violated Rule 14a-3(b) and that the district court erred as a matter of law in supporting its summary judgment ruling, at least in part, with a contrary interpretation and application of the rule.

### B.

■ Because proof that GAF violated Rule 14a-3(b), without more, is insufficient to establish a cause of action under § 14(a), we must go on to determine whether appellant proved injury. As the district court correctly noted, "[t]he injury claimed must not result merely from a technical misadventure; it must undermine the purposes upon which the rule is based and actual damage must be susceptible to proof." *Ash v. GAF Corp.,* 546 F.Supp. 89 (E.D.Pa.1982). The complainant must show that he suffered harm from the infringement of his corporate suffrage rights or from a corporate transaction that was approved because of inadequate disclosure in a proxy solicitation. *See Wachovia Bank & Trust Co. v. National Student Marketing Corp.,* 461 F.Supp. 999, 1007 (D.D.C.1978); *In re Penn Central Securities Litigation,* 347 F.Supp. 1327, 1341–42 (E.D.Pa.1972), *aff'd* 494 F.2d 528 (3d Cir.1974).

■ Appellant claims that he suffered two types of harm from GAF's improper mailing procedure: (1) he received his annual report two days later than his proxy materials; and (2) he was denied his right to a fair and proper annual meeting and fair consideration and voting by all shareholders in connection with the election of directors. We do not find these allegations sufficient to prove injury.

We reject appellant's first claim because he failed to prove that the untimely receipt of his annual report damaged his fundamental right of corporate suffrage protected by § 14(a) and Rule 14a-3(b). He failed to demonstrate, for example, that he exercised his proxy or voted before receiving the annual report. In fact, there was affirmative evidence that the tardy arrival of

the report had no effect on his voting rights because he never exercised his proxy or participated in the election. We conclude therefore, that proof that appellant received his annual report after his proxy materials, without more, is insufficient to establish injury.

We read appellant's second claim to suggest that he suffered harm not from the effect the improper mailing procedure had on his rights and interests, but from the effect it had on the collective rights and interests of all GAF stockholders. We reject this claim as well because even presuming that many of the shareholders, like appellant, received their annual reports late, appellant failed to prove that the delay injured their fundamental rights of corporate suffrage. He offered no proof, for example, that any of the shareholders exercised their proxies before receiving their annual reports. In addition, appellant failed to prove that the delay impaired the integrity of the election by allowing management, through an improper mailing procedure, to control the ballot box. In fact, because the report followed closely on the heels of the proxy materials, the election was uncontested, and the shareholders had the option of revoking their proxies at any time prior to the annual meeting, we find that the untimely arrival of the annual report had no adverse effect on the rights of the shareholders. We hold, therefore, that appellant suffered insufficient injury from GAF's violation of Rule 14a-3(b) to entitle him to relief under § 14(a). Finding no proof of harm, we need not go on to address the issue of causation.[1]

### IV.

We cannot close, however, without noting a particular irony in the litigation of this case. Through his briefs, oral arguments, and pleadings, plaintiff-appellant Ash attempts to portray himself as a white knight in shining armor valiantly trying to stop the villains who would deny stockholders their "corporate democracy." But despite his vigorous and strenuous protests against management, he never exercised the privilege which he claims to be so sacred—voting for directors of the corporation. Thus, while he was willing to have hundreds, if not thousands, of hours spent by counsel, judges, law clerks, and paralegals, he was unwilling to spend even the one *minute,* or at most the few minutes, that it would have taken to vote.

In addition, at every critical stage of the litigation where he could have requested immediate relief for alleged violations of Rule 14a-3(b), Ash did nothing. He never filed a complaint with the SEC (where counsel fees are not awarded to plaintiffs). And despite the fact that the annual meeting was scheduled to be held twenty-five days after the complaint was filed, he sought neither a temporary restraining order nor a preliminary injunction to prevent the election from taking place. He chose instead to ask that the election, once held, be invalidated—a request that has served merely to protract the litigation and convince us that there is no redressable injury.

Where a plaintiff has a true cause of action, his motivation in filing suit is irrelevant. But where counsel seems more concerned about protracting litigation than in remedying an injury, we are forced to express our intolerance and displeasure. Efforts to protract unmeritorious claims must be thwarted so that we will not have such burgeoning backlogs that we preclude those with meritorious claims from having a thoughtful consideration and prompt resolution of their cases.

### V.

For the reasons stated herein, we will affirm the district court's summary judgment ruling in favor of GAF.

---

1. While we sustain the dismissal of the complaint, because there was no proof of injury, we recognize that if the appellee in a subsequent proxy solicitation continued the same mailing practices that we have found violative of Rule 14a-3(b) a district court could enjoin them from such practices.