**CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Plaintiff,**

v.

**THE CHUBB CORPORATION, Dean R. O'Hare, David B. Kelso, Henry B. Schram, Executive Risk Inc., Stephen J. Sills, Robert H. Kullas and Robert V. Deutsch, Defendants.**

No. CIV. 00–4285(GEB).

United States District Court, D. New Jersey.

Jan. 10, 2001.

Peter S. Pearlman, Cohn Lifland Pearlman Herrmann & Knopf, Saddlebrook, NJ, S. Lerach, Darren J. Robbins, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, for Plaintiff California Public Employees' Retirement System.

Thomas F. Campion, Drinker Biddle & Shanley LLP, Florham Park, NJ, Herbert M. Wachtell, John F. Savarese, Elaine P. Golin, Wachtell Lipton Rosen & Katz, New York, NY, for Defendants Chubb Corporation, Dean O'Hare, David B. Kelso, Henry B. Schram, and Executive Risk Inc.

William J. O'Shaughnessy, McCarter & English, LLP, Newark, NJ, for Defendants Stephen J. Sills, Robert H. Kullas, and Robert V. Deutch.

## OPINION

BROWN, District Judge.

This matter comes before the Court upon the motion of the plaintiff California Public Employees' Retirement System ("CalPERS") and putative class members the New York State Common Retirement Fund ("NYSCRF") and John N. Teeple for appointment as lead plaintiffs and the approval of their attorneys, Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss") as lead plaintiffs' counsel and the law firm of Cohn Lifland Pearlman Herr-

mann & Knopf ("Cohn Lifland") as liaison counsel pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u–4 and 77z–1 (the "PSLRA" or the "Act"). The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §§ 78aa and 77v(a). For the reasons discussed below, the motion is denied without prejudice and the plaintiff is ordered to re-publish notice in accordance with this Opinion.

## I. BACKGROUND

This action arises under the Securities Act of 1933, 15 U.S.C. § 77a, *et seq.* (the "Securities Act") and the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* (the "Exchange Act"). The gravamen of the plaintiff's complaint is that the defendants defrauded investors in Chubb Corporation ("Chubb") and Executive Risk Inc. ("Executive Risk") when Chubb artificially inflated the price of its stock between April 27, 1999 and October 25, 1999 in order to effect a stock-for-stock merger between Chubb and Executive Risk in July 1999. *See* Complaint for Violation of §§ 10(b) (and Rule 10b–5), §§ 14 and 20(a) of the Securities Exchange Act of 1934 and §§ 11 and 15 of the Securities Act of 1933 ("Complaint") at ¶ 1. The plaintiff alleges that by artificially inflating Chubb's stock price, the defendants "reduced the number of shares Chubb had to issue to acquire Executive Risk, *saving Chubb at least $300–$400 million,* while enabling the top three insiders of Executive Risk to receive millions in special benefits and payments upon the sale of Executive Risk to Chubb." *Id.* (emphasis in original).

The plaintiff's complaint alleges three causes of action. In Count I CalPERS asserts a cause of action under Section 10(b) of the Exchange Act and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, on behalf of all purchasers of Chubb stock between April 27, 1999 and October 15, 1999 and owners of Executive Risk stock who exchanged their Executive Risk shares for Chubb shares in July 1999 claiming that the investors were defrauded by the defendants when the defendants made materially false or misleading statements about Chubb's financial condition and future performance. *See id.* at ¶¶ 138–41. In Count II CalPERS asserts a claim under Section 11 of the Securities Act of 1933 (the "Securities Act") against Chubb, O'Hare, Schram and Kelso on behalf of all shareholders of Executive Risk who exchanged their Executive Risk shares for Chubb shares in July 1999 alleging that a registration statement filed by Chubb for 14.8 million newly registered shares issued to Executive Risk shareholders in the stock-for-stock merger of the companies was false or misleading. *See id.* at ¶¶ 142–47. CalPERS also alleges a cause of action on behalf of Executive Risk shareholders in Count III, but under Section 14(a) of the Exchange Act alleging that the proxy material provided to Executive Risk shareholders was false or misleading and caused the Executive Risk shareholders to vote in favor of the stock-for-stock merger of the companies in July 1999. *See id.* at ¶¶ 148–53.

The only named plaintiff in the complaint is CalPERS, which did not own Executive Risk shares at the time of the merger and, thus, according to the allegations on the face of the complaint may not have standing to assert the claims alleged in Counts II and III as those counts assert causes of action on behalf of Executive Risk shareholders only. Notwithstanding this obvious threshold deficiency in the plaintiff's claims, the plaintiff filed with its complaint the sworn "Certification of Named Plaintiff Pursuant to Federal Securities Laws," which indicates that Ted White, Manager, Corporate Governance Unit at CalPERS, reviewed the complaint and authorized its filing.

On or about October 30, 2000, the moving parties filed a motion seeking the appointment of the group of three lead plaintiffs as co-lead plaintiffs and approval of lead counsel pursuant to the PSLRA, 15

U.S.C. §§ 78u–4 and 77z–1.[1] The moving parties are the named plaintiff, CalPERS, NYSCRF, which is another institutional investor that purchased Chubb shares during the class period but did not own Executive Risk shares in July 1999, and John N. Teeple, who is an individual investor and the only moving class member who owned shares of Executive Risk at the time of the merger. No other potential lead plaintiffs have moved or opposed the motion, although the motion is opposed by the defendants.[2] On November 27, 2000, the Court heard the arguments of counsel and the matter is now ripe for disposition.

## II. DISCUSSION

The motion for appointment of lead plaintiff and approval of lead counsel arises under the provisions of the PSLRA. *See In re Lucent*, 194 F.R.D. at 144. The PSLRA, according to its legislative history, was enacted in response to perceived abuses of federal securities class actions through which a race to the courthouse often resulted in non-representative plaintiffs and their attorneys controlling the litigation and reaping disproportionate fee awards at the end of the case. *See id.*; *Burke v. Ruttenberg*, 102 F.Supp.2d 1280, 1303 (N.D.Ala.2000); *In re Party City Securities Litigation*, 189 F.R.D. 91, 103 (D.N.J.1999). "The PSLRA provides a method for identifying a plaintiff, or plaintiffs, who is, or are, the most strongly aligned with the class of shareholders, and most capable of controlling the selection, and actions, of counsel." *In re Lucent*, 194 F.R.D. at 144; *see also In re Party City*, 189 F.R.D. at 103 (citations omitted).

Among other things, the PSLRA altered the procedure to be employed by courts in appointing the lead plaintiff for a purported class. *See In re Lucent*, 194 F.R.D. at 144–45; *Ravens v. Iftikar*, 174 F.R.D. 651, 654–55 (N.D.Cal.1997). "Rather than selecting as the governing plaintiff in a securities class action the first plaintiff to reach the courthouse door, the district court is to choose the most adequate plaintiff to oversee the litigation." *Burke*, 102 F.Supp.2d at 1307. The Act provides, in relevant part:

> the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members . . . .

15 U.S.C. § 78u–4(a)(3)(B)(i). In abrogating the first-to-file rule, appointment of the

---

1. Although the plaintiff asserts claims under both the Securities Act and the Exchange Act, for ease of reference, the Court hereinafter will cite only to the PSLRA as codified in the Exchange Act at 15 U.S.C. § 78u–1.

2. Defendants Chubb, Dean R. O'Hare, David B. Kelso, Henry B. Schram and Executive Risk Inc., represented by Wachtel Lipton and Drinker Biddle, filed a brief in opposition to the motion, which was joined by defendants Stephen J. Sills, Robert H. Kullas and Robert V. Deutch, represented by McCarter & English, who did not file a separate brief. The plaintiff argues in its reply brief that the defendants do not have standing to object to the proposed lead plaintiffs or the approval of lead plaintiffs' counsel. While the majority of courts that have addressed the issue have held that defendants lack standing to object to the adequacy of lead plaintiffs and their chosen counsel, *see, e.g., In re Lucent Technologies, Inc., Securities Litigation*, 194 F.R.D. 137, n. 17 (D.N.J.2000); *In re Nice Systems Securities Litigation*, 188 F.R.D. 206, n. 11 (D.N.J.1999); *In re Milestone Scientific Securities Litigation*, 183 F.R.D. 404, 414–15, n. 14 (D.N.J.1998), the defendants do have standing to object to the form of the notice published by the plaintiff after filing the complaint. *See In re Lucent*, 194 F.R.D. at 148; *see also Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 580 (N.D.Cal. 1999) (noting that "excluding defendants from the discussion of what notice is adequate would not serve to bring to light the range of considerations the court should have in view when deciding upon notice."). Since the Court addresses only the adequacy of the published notice in this Opinion, the Court will consider the objections to that notice raised by the defendants.

lead plaintiff in favor of the most adequate plaintiff ensures that institutional plaintiffs with expertise in the securities markets and real financial interests in the integrity of the markets and outcome of the litigation would come forward and control the litigation, rather than the lawyers and their professional plaintiffs. *See In re Lucent*, 194 F.R.D. at 145 (citations omitted); *see also Burke*, 102 F.Supp.2d at 1305–06; *In re Donnkenny Inc. Securities Litigation*, 171 F.R.D. 156, 157 (S.D.N.Y.1997) (citations omitted). As aptly stated by one court, "[t]he appointment of the most adequate plaintiff is meant to empower investors by placing behind the driver's seat on the plaintiffs' side an experienced investor or capable investors who have substantial and genuine interests in the outcome of the litigation." *Burke*, 102 F.Supp.2d at 1307 (citations omitted).

The selection of the most adequate plaintiff under the PSLRA is governed by a rebuttable presumption in favor of the class member with the largest financial interest in the outcome of the litigation. *See In re Lucent*, 194 F.R.D. at 145; *In re Nice Systems*, 188 F.R.D. at 215; *In re Cendant Corp. Litigation*, 182 F.R.D. 144, 145 (D.N.J.1998). Specifically, the Act provides that

> the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i); (bb) in the determination of the court, *has the largest financial interest* in the relief sought by the class; and (cc) otherwise satisfies the requirement of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) (emphasis supplied). This presumption of adequacy may be rebutted only "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff(aa) will not fairly and adequately protect the interest of the class; or (bb) is

subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). The PSLRA further provides that once the most adequate plaintiff is selected, the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v).

Procedurally, the PSLRA provides that the plaintiff who files the initial action must publish notice within 20 days of filing that informs class members of the pendency of the action, the claims asserted in the complaint, the class period, and their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(A)(i). Within 60 days of the publication of that notice, any member of the putative class may move the court for appointment to serve as lead plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(A)(i)(II). The statute further provides that within 90 days of publication the Court "shall consider any motion made by a purported class member in response to the notice." 15 U.S.C. § 78u–4(a)(3)(B)(i).

The fundamental purpose of the § 78u–4(a)(3)(A)(i) notice requirement is to provide class members with sufficient information about the suit and inform class members of their right to move to be appointed lead plaintiff so they can make an informed and reasoned judgment about whether they should seek lead plaintiff status. *See In re Lucent*, 194 F.R.D. at 146 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). To that end, "[n]otice pursuant to PSLRA should be neither technical nor uninformative nor misleading." *Id.*; *see also Ravens*, 174 F.R.D. at 658 ("This objective is unlikely to be achieved by perfunctory notice which fails to enlist qualified investors ...."). 

Thus, "[u]nder this section, proper notice must (1) be properly published; (2) advise members of the putative class of the relevant details of (a) the pendency of the

action, (b) the claims asserted therein, and (c) the period of the action; and (3) inform putative class members that they have the right to move the district court to serve as lead plaintiff in the class action." *Burke,* 102 F.Supp.2d at 1310.

▇ In deciding a motion for the appointment of a lead plaintiff under the Act, the Court has an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff, the plaintiff with the largest financial stake in the outcome of the litigation, to come forward and take control of the litigation. *See Ravens,* 174 F.R.D. at 658 (quoting House Conf. Rep. No. 104–369, 104th Cong., 1st Sess., 1996 U.S.C.C.A.N. 730, 731); *see also Burke,* 102 F.Supp.2d at 1309 ("A district court must exercise exceptional care to insure that in applying the lead plaintiff provisions of the statute, the concerns that motivated Congress are carefully heeded, as the determination of lead plaintiff by the district court is, with probably little exception, not immediately subject to review."); *In re Oxford Health Plans, Inc., Securities Litigation,* 182 F.R.D. 42, 45 (S.D.N.Y. 1998) ("The PSLRA calls for greater supervision by the Court in the selection of which plaintiffs will control the litigation.").

Here, Milberg Weiss filed the complaint on or about August 31, 2000 on behalf of CalPERS and on that same date published in the *Business Wire* notice to putative class members. The notice states in its entirety:

> Milberg Weiss (http://www.milberg. com/chubb/) today announced that a class action lawsuit was filed on August 31, 2000 in the United States District Court for the District of New Jersey on behalf of purchasers of The Chubb Corporation ("Chubb") (N.Y.SE: CB) common stock during the period between April 27, 1999 and October 15, 1999 (the "Class Period") including the former shareholders of Executive Risk Inc. ("Executive Risk") who exchanged their Executive Risk shares for Chubb stock in the July 1999 merger.
>
> If you wish to serve as lead plaintiff, you must move the Court no later than October 30, 2000. If you wish to discuss this action or have any questions concerning this notice or your rights or interests, please contact plaintiff's counsel, William Lerach or Darren Robbins of Milberg Weiss at 800/449–4900 or via e-mail at wsl£mwbhl.com. You can join this class action online at http://www. milberg.com/chubb/.
>
> This action seeks damages for violations of Sections 10(b), 14 and 20(a) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder and Sections 11 and 15 of the Securities Act of 1933. The defendants are The Chubb Corporation, Executive Risk Inc., Dean R. O'Hare, Chairman and Chief Executive Officer, Henry B. Schram, Chubb's Senior Vice President and Chief Accounting Officer, David B. Kelso, Chubb's Executive Vice President and Chief Financial Officer, Stephen J. Sills, President and CEO of Executive Risk, Robert H. Kullas, Chairman of Executive Risk and Robert V. Deutch, Executive Vice President and Chief Financial Officer of Executive Risk.
>
> Chubb sells personal, standard commercial and specialty commercial insurance and is one of the largest U.S. underwriters of directors' and officers' liability insurance. This action arises out of a scheme to make it appear that serious problems and increasingly large losses in Chubb's standard commercial insurance business, which had badly hurt Chubb's results in 97–98, were being overcome by a combination of rate increases and non-renewal of unprofitable standard commercial insurance business (the "rate increase/policy non-renewal initiative"), which enabled Chubb to report better-than-expected 1stQ 99 earnings per share ("EPS"), indicating Chubb's

business was turning around faster than expected and that Chubb would therefore achieve stronger EPS growth in 99 and 00 than earlier forecast, thus artificially inflating Chubb's stock to $76–3/8 per share in mid–99. This enabled Chubb to successfully complete its extremely important acquisition of Executive Risk, a highly profitable underwriter of directors' and officers' liability insurance, in exchange for 1.235 shares of Chubb stock for each share of Executive Risk sock, a total of 14.8 million shares plus 1.8 million shares reserved for Executive Risk's executives' options, via a 6/17/99 Registration Statement and a 6/17/99 Merger Proxy and other false and misleading public statements. The inflation of Chubb's stock price reduced the number of shares Chubb had to issue to acquire Executive Risk, saving Chubb at least $300–$400 million, while enabling the top three insiders of Executive Risk to receive millions in special benefits and payments upon the sale of Executive Risk to Chubb. However, just eight days after Chubb's acquisition of Executive Risk, Chubb shocked the markets by revealing much worse-than-expected 2ndQ 99 EPS due to increasing losses in its standard commercial insurance business, later revealing that its "rate increase/policy non-renewal initiative," which prior to the merger defendants had consistently represented was beneficial and would continue to benefit Chubb's 99 EPS, would have no positive impact on Chubb's results until mid–2000 at the earliest. Chubb's stock immediately declined and continued to fall, to as low as $44 in mid–10/99, as Chubb continued to report worsening results for its standard commercial insurance business, which caused Chubb's 99 EPS to decline sharply from its 98 EPS.

Plaintiff alleges that defendants' materially false and misleading statements, included, among others:

— That renewal rate increases were sticking.

— That Chubb was sending a strong message that its business was getting better.

— That its CEO was totally confident that the rate increase/non-renewal strategy was working.

— That Chubb's stock was undervalued and there was more good news ahead.

— That Chubb's standard commercial combined loss ratio (excluding catastrophes) would improve in 1999 and 2000.

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") sets forth the following requirements, among others, for any person seeking to serve as a representative:

Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that:

(1) states that the plaintiff has reviewed the complaint and authorized its filing;

(2) states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of the plaintiff's counsel or in order to participate in any private action arising under this chapter;

(3) states that the Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;

(4) sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint;

(5) identifies any other action under this chapter, filed during the 3–year period preceding the date on which the certification is signed, in which the plain-

tiff has sought to serve as a representative party on behalf of a class; and

(6) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with paragraph (4). 15 U.S.C. Section 78u–4(a)(2)(A)(i)–(iv).

In addition, the PSLRA provides that the Court shall appoint as Lead Plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. In determining the "most adequate plaintiff," the PSLRA provides that the Court shall adopt a rebuttable presumption that the most adequate plaintiff is the person or group that has either filed a complaint or made a motion for appointment as Lead Plaintiff, has the largest financial interest in the relief sought by the class, and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. Section 78u–4(a)(3)(iii). At the Lead Plaintiff selection stage, this latter requirement involves a preliminary showing that the proposed Lead Plaintiff's claims are typical of claims of the class members, and that the Lead Plaintiff will be an adequate representative of the class. Any member of the alleged class may seek to be appointed as Lead Plaintiff, even if that person has not filed a complaint.

CONTACT: Milberg Weiss Bershad Hynes & Lerach LLP
William Lerach, 800/449–4900
wsl£mwbhl.com

Douglas Declaration at Exhibit 3.

■ There is no dispute that the plaintiff filed the notice within 20 days of filing the complaint or that the moving class members moved for appointment as lead plaintiffs and approval of their attorneys as lead plaintiffs' counsel within 60 days of publication of the notice. The plaintiff published the notice on the same date it filed the Complaint and the moving parties filed their motion 60 days later on October 30, 2000. Nor is it disputed that the *Business Wire* is a widely circulated national business-oriented publication or wire service within the meaning of the Act. *See In re Nice Systems,* 188 F.R.D. at 216 and n. 8 (citations omitted) (holding that the *Business Wire* satisfies the Act's "widely circulated business-oriented" wire service requirement.). Additionally, the Court considered the motion within 90 days of publication when it heard the arguments of counsel on November 27, 2000. However, the notice published by the plaintiff in this action is substantively inadequate because the information provided lacks sufficient detail and depth to permit an interested class member to make an informed decision as to whether he, she or it should seek appointment as lead plaintiff.

In *In re Lucent,* Judge Lechner held:

In addition to providing information concerning the pendency of the class action, the claims of the action should be described, the class period should be set out, the misstatements or omissions alleged should be described together with release dates of such disclosure and, as well, the possibility of intra-class conflicts among potential class members who purchased the stock of the company at various intervals throughout the proposed period should be described.

194 F.R.D. at 148. The notice published here, while lengthier than the notice rejected by Judge Lechner in *In re Lucent,* suffers from some of the same substantive defects. For example, the notice informs class members that the plaintiff filed an action in the District of New Jersey on August 31, 2000, but fails to disclose the caption of the case, the docket number, the judge to whom the case was assigned, the vicinage in which the judge sits, or the address of the Court. In a district like the District of New Jersey that is unified but sits in three separate vicinages, an interested class member would not even know

to which courthouse to go to examine a copy of the complaint and would not know before which judge an appropriate motion should be filed. At oral arguments, counsel for the plaintiff, William S. Lerach, suggested that this information as well as more substantive information about the claims could be found on the Milberg Weiss web site, where a class member could examine a copy of the complaint itself. However, the address of the web site provided in the notice, http://www.milberg.com/chubb/, does not contain the complaint or a link to another Internet web site where the complaint can be viewed or downloaded. *Compare* http://www.milberg.com/chubb/ (visited on Nov. 27, 2000) (press release with no link to the actual complaint) *with* http://www.milberg.com/att/ (visited on Nov. 30, 2000) ("Notice of Opportunity to Join AT & T Securities Litigation" with link enabling class members to download the complaint).

Even if Milberg Weiss's web site contained a copy of the *Chubb* complaint as it does for the *AT & T* case, the complaint would provide little if any useful information about the pendency of the action because the complaint that can be downloaded in the *AT & T* case is not a filed version and, thus, does not contain a docket number, does not indicate to which judge the case has been assigned, and does not identify the vicinage in which the case is pending or the address of the Court—some of the same defects present here. Moreover, referring class members to Milberg Weiss's web site cannot cure other more substantive deficiencies in the notice for the same reason that generic telephone contact information cannot—a "lawyer has an incentive to discourage, rather than foster, investor competition" and the Court cannot delegate the duty to cure substantive deficiencies of notices to interested lawyers in off-the-record conversations with unrepresented class members. *See Ravens*, 174 F.R.D. at 655–56 (citation omitted). Additionally, Milberg Weiss's web site is loaded with self-promotional information, for example, "In the securities area alone Milberg Weiss has been responsible for a number of outstanding recoveries on behalf of shareholders which, in the aggregate, total approximately $20 billion." Such self-promotional material further diminishes the effectiveness of notices published under the PSLRA because it undermines the PSLRA's goal of bringing forward independent competing class members who may have a larger financial stake in the outcome of the litigation than the first-to-file plaintiff. *See In re Lucent*, 194 F.R.D. at 147 (criticizing a published notice as a naked "effort at marketing.").

Additionally, the notice fails to identify all of the misstatements or omissions alleged in the complaint, the release dates of the misstatements or omissions, or the possibility of intra-class conflicts, *i.e.*, whether or not CalPERS continues to hold Chubb stock. *See In re Lucent*, 194 F.R.D. at 148; *see also Burke*, 102 F.Supp.2d at 1315–16; *Wenderhold*, 188 F.R.D. at 582; *Ravens*, 174 F.R.D. at 658. The notice merely lists five statements, "among others," that CalPERS alleges were false and misleading. *See* Douglas Declaration at Exhibit 3.

Moreover, a more critical omission in the notice published here is that the notice fails to disclose to interested investors that while two of the three causes of action purport to assert claims on behalf of former Executive Risk shareholders who exchanged their shares for Chubb shares in July 1999, the sole plaintiff, CalPERS, owned exactly zero shares of Executive Risk stock during the class period and, therefore, likely lacks standing to assert claims on behalf of former Executive Risk shareholders.[3] A class member would be

---

**3.** *See, e.g., Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 286 (3d Cir.), *cert. denied*, 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992) (holding that to maintain action under § 11 of the Securities Act plaintiff must allege purchase of shares traceable to the allegedly false or misleading registration statement); *see also Joseph v. Q.T. Wiles*, 223 F.3d 1155,

unable to ascertain from the published notice that an investor holding even one share of Executive Risk stock in July 1999 would have a larger financial interest in the outcome of the litigation with respect to Counts II and III of the complaint than CalPERS, which according to the plaintiff has assets of $175 billion and is the largest public employee retirement system in the United States. *See* Plaintiff's Memorandum of Law at 2. Even a sophisticated institutional investor with a significant stake in Executive Risk at the relevant time might assume from the published notice that CalPERS, given its size, held a greater stake and, based on that assumption, opt to forgo an opportunity to seek lead plaintiff status. Of course, this is speculation but the point is that the notice fails to provide adequate information about CalPERS's holdings to enable a former Executive Risk shareholder to make an informed decision about whether he, she or it should move for lead plaintiff status. This additional information might ultimately make no difference whatsoever and may not cause any competing class members to come forward and seek lead plaintiff status, but class members must be given an opportunity to make a decision on whether to seek lead plaintiff status based on an accurate picture of CalPERS's real stake in the litigation or, more accurately, lack thereof. "For an investor to make an intelligent determination of whether he, she, or it will move a court to be appointed lead plaintiff that investor must have all relevant information that would inform such a choice." *Burke,* 102 F.Supp.2d at 1310–11.

Furthermore, the omission of any reference in the notice to CalPERS's lack of standing leads the Court to the inescapable conclusion that Milberg Weiss filed the complaint and published the notice in an effort to locate a viable plaintiff able to assert the Executive Risk claims after the fact, thus, reverting back to the pre-PSLRA era of lawyer-driven securities litigation. In fact, Milberg Weiss's efforts were successful in that the notice smoked out the only moving class member who owned Executive Risk stock at the relevant time—John N Teeple—and brought that class member into Milberg Weiss's fold. This conduct contravenes both the letter and spirit of the PSLRA and cannot go unchecked.

Thus, the Court concludes that the notice published by the plaintiff is deficient in that it fails to provide sufficient information to enable a class member to make an informed decision on whether to seek lead plaintiff status. The plaintiff, therefore, is ordered to re-draft the notice of pendency in accordance with this Opinion. That notice must include the caption of the case, the docket number of the case, the Judge to whom the case is assigned, and the address of the Trenton vicinage. More substantively, the notice must set forth each of the alleged misstatements or omissions giving rise to the plaintiff's claims, the dates of those misstatements or omissions, and must disclose CalPERS's potential conflicts of interest with other class members. Finally, the notice must disclose to class members that CalPERS did not own any shares of Executive Risk stock and, thus, may lack standing to pros-

1159 (10th Cir.2000) (holding "that an aftermarket purchaser has standing to pursue a claim under section 11 so long as he can prove the securities he bought were those sold in an offering covered by the false registration statement."); *Milman v. Box Hill Systems Corp.,* 192 F.R.D. 105, 109 (S.D.N.Y.2000) (same). *See also Bolger v. First State Financial Srvs.,* 759 F.Supp. 182, 192–93 (D.N.J. 1991) (holding that in order to make out a claim under § 14(a) of the Exchange Act, "a plaintiff must show that a proxy statement contained a material misrepresentation or omission, that the plaintiff was injured by the material misrepresentation or omission, and that the proxy solicitation itself, rather than the particular defect in the solicitation materials was 'an essential link in the accomplishment of the transaction.' ") (quoting *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 385, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) *citing Ash v. GAF Corp.,* 723 F.2d 1090, 1092–93 (3d Cir. 1983)).

**582**

ecute Counts II and III of its own complaint.

The information the Court is requiring here is case-specific. There may be instances where more information is required to be disclosed in order to accomplish the PSLRA's primary goal of appointing an adequate lead plaintiff and there may be instances where less information is called for. In this instance, the requisite disclosure must include at least the facts identified by Judge Lechner in *In re Lucent,* as well as the critical case-specific information with respect to CalPERS's standing to assert causes of action on behalf of shareholders of Executive Risk.

Accordingly, the plaintiff shall submit a proposed form of notice, without narrative or legal argument, to the Court and serve it on the defendants' counsel within 14 days of the date this Opinion is entered. The defendants may submit to the Court and serve on the plaintiff's counsel a redlined version of that notice reflecting their proposed amendments, without narrative or legal arguments, ten days after the plaintiff submits its proposed form of notice. The Court will thereafter issue an order setting forth the notice to be published by the plaintiffs. The subsequent publication will have the effect of restarting the time periods prescribed in 15 U.S.C. §§ 78u–4(a)(3) and 77z–1(a)(3). The Court will then consider any properly filed motion for appointment of lead plaintiff and approval of lead plaintiff's counsel.

### III. CONCLUSION

For the reasons discussed above, the motion for appointment of lead plaintiffs and the approval of lead plaintiffs' attorney is denied without prejudice. An appropriate form of order is filed herewith.