Steven **CHENEY**, et al., individually and on behalf of all others similarly situated, Plaintiffs,

v.

**CYBERGUARD CORPORATION**, Robert L. Carberry, William D. Murray, Patrick O. Wheeler, and Shelton James, Defendants.

No. 98–6879–CIV.

United States District Court, S.D. Florida.

Aug. 14, 2002.

Michael J. Pucillo, Berman, DeValerio, Pease, Tabacco, Burt & Pucillo, West Palm Beach, FL, Andrew N. Friedman, Chone, Milstein, Hausfeld & Toll, Washington, DC,

Emily Cornelia Komlossy, Goodkind, Labaton, Rudoff & Sucharow, Fort Lauderdale, FL, Mel E. Lifshitz, Jeffrey M. Haber, Bernstein, Liebhard & Lifshitz, Lee S. Shalov, James P. Bonner, Shalov, Stone & Bonner, Russel H. Beatie, Daniel A. Osborn, Beatie & Osborn, Richard D. Kranich, New York City, for Steven Cheney.

Alan Michael Grunspan, Kaufman, Miller, Dickstein & Grunspan, George G. Mahfood, Leesfield, Leighton, Rubio & Mahfood, Miami, FL, Michael J. Pucillo, Wendy Hope Zoberman, Berman, DeValerio, Pease, Tabacco, Burt & Pucillo, Leo Wassner Desmond, West Palm Beach, FL, Samuel H. Rudman, Steven G. Schulman, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, Peter Harold Rachman, Emily Cornelia Komlossy, Goodkind, Labaton, Rudoff & Sucharow, Fort Lauderdale, FL, Robert Cecil Gilbert, Coral Gables, FL, Lee S. Shalov, Shalov, Stone & Bonner, New York City, Julian H. Kreeger, Robert Randall Adler, Maya Susan Saxena, Abraham Rappaport, Milberg, Weiss, Bershad, Hynes & Lerach, Boca Raton, FL, Mark C. Gardy, James S. Notis, Abbey Gardy, New York City, Mel E. Lifshitz, New York City, Daniel J. Mogin, Lisa J. Frisella, The Mogin Law Firm, San Diego, CA, for Ellen Feder, Michael Brown, L.I.S.T. Inc., Sudhir Mehta, Cristina Kazan, Randy Lewis, Scott DiClaudio, Dean Miller, Jay Reynolds, Margita Forkosh, Jeffrey Delman, Michael D. Donham, Dale Credeur, Fenner, Reed & Jackson, Elizabeth Rultenberg, Edwin Dickler, Dawn A. Clements, Robert Govic, Cromwell Development Corp., Matt Leighton, Ernest Frank, Tony S. Crociata.

Richard Bryan Jackson, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, Joseph Lester Rebak, Joseph A. DeMaria, Cornelius Thomas Tew, Jr., John Marion Quaranta, Benjamin Raul Alvarez, Tew, Cardenas, Rebak, Kellogg, Lehman et al., Mindy Lee Pallot, Miami, FL, Steven Mark Katzman, Katzman, Wasserman & Bennardini, Boca Raton, FL, Deborah Sampieri Corbishley,

Richard H. Critchlow, Elizabeth Brooks Honkonen, Jeffrey Todd Foreman, Kenny, Nachwalter Seymour, Arnold, Critchlow & Spector, Miami, FL, Alvin F. Lindsay, III, Steel, Hector & Davis, Miami, FL, Richard A. Getty, Walker P. Mayo, III, Jason Hargadon, Getty, Keyser & Mayo, Lexington, KY, for Cyberguard Corporation, William D. Murray, Robert L. Carberry.

Mark Jurgen Heise, Boise, Schiller & Flexner, LLP, Miami, FL, for Bradley Lesher.

Mark Jurgen Heise, Boise, Schiller & Flexner, LLP, Eugene E. Stearns, Richard Bryan Jackson, Betty Chang Rowe, Stearns, Weaer, Miller, Weissler, Alhadeff & Sitterson, Cornelius Thomas Tew, Jr., Joseph Lester Rebak, Mindy Lee Pallot, Tew, Cardenas, Rebak, Kellogg, Lehman et al., Dirk Lorenzen, Caruana, Langan, Lorenzen & Mendelsohn, Miami, FL, Edward Alan Marod, West Palm Beach, FL, Patricia A. Gorham, John A. Chandler, Kristen Jones Indermark, Deena R. Bernstein, Sutherland, Asbill & Brennan, Atlanta, GA, Sandy A. Liebhard, Bernstein, Leibhard & Lifshitz, New York City, for Bradley Lesher, C. Shelton James, Tommy D. Steele, Patrick O. Wheeler, KPMG Peat Marwick, L.L.P.

## ORDER ON MOTION FOR CLASS CERTIFICATION

GOLD, District Judge.

THIS CAUSE is before the Court upon Lead Plaintiffs' Amended Motion for Class Certification [D.E. 185], filed on April 20, 2001.[1] A supplement to the Plaintiffs' Motion for Class Certification [D.E. 313] was filed on March 1, 2002. In response to this motion, the Defendants submitted a Joint Memorandum in Opposition to Class Certification [D.E. 318] on March 25, 2002 and the Plaintiffs filed a Reply [D.E. 324] on April 16, 2002. Oral argument on class certification issues was held on Friday, May 17, 2002.

The Second Amended Class Complaint,[2] filed under seal on April 5, 2001, alleges

---

1. The Amended Motion for Class Certification was filed after the resolution of various pending discovery issues. The original Motion for Class Certification [D.E. 168] was filed by Lead Plaintiffs on October 17, 2000.

2. The voluminous Second Amended Complaint consists of over one hundred and thirty-seven

securities fraud by the Defendants against a class of investors who acquired common stock of CyberGuard Corporation ("Cyber-Guard") between November 7, 1996 and August 24, 1998 (the "Class Period") and were damaged by the purchase of such stock (the "Class"). Specifically, the Plaintiffs contend that (1) the Defendants violated Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act"), as amended, 15 U.S.C. § 78j(b),[3] and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5,[4] by perpetrating a fraudulent scheme in which the Defendants made various misrepresentations regarding CyberGuard upon which class members relied to their detriment (Count I) and that (2) the individual Defendants, Robert L. Carberry ("Carberry"), William D. Murray ("Murray"), Patrick O. Wheeler ("Wheeler") and Shelton James ("James"), violated Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a),[5] because they were "controlling persons" under the Act who used their power to "cause CyberGuard to engage in ... unlawful conduct" and failed to prevent unlawful conduct (Count II). Second Amended Complaint, ¶ 444.[6] Subject matter jurisdiction is invoked pursuant to 28 U.S.C. ¶ 1331 and 1337 as well as

Section 27 of the Exchange Act [15 U.S.C. § 78aa].

Upon a careful review of the Second Amended Complaint, the parties' arguments, as well as, relevant record evidence and case law, this Court concludes that Plaintiffs' Amended Motion for Class Certification should be granted.

## I. FACTUAL BACKGROUND [7]

Plaintiffs have brought the instant securities fraud action in order to obtain remedies for the Defendants' alleged misrepresentations and omissions made during the Class Period. The Class sought to be certified includes all "investors who acquired the common stock of defendant CyberGuard Corporation [during the class period] and who were damaged thereby." Second Am. Compl. ¶ 1.[8] The Lead Plaintiffs previously identified by the Court are Robert Govic ("Govic"), Michael Brown ("Brown"), Dean Miller ("Miller"), and Eliot Meshulam ("Meshulam"). See Am. Class Certification Memo., p. 1; Suppl. Motion for Class Certification [D.E. 313]. In the instant motion, the Lead Plaintiffs seek an order certifying them as repre-

---

(137) pages. Plaintiffs filed their first class action complaint on August 25, 1998. On September 28, 1998 and on October 21, 1998, the Court accepted transfer of and consolidated several similar actions against CyberGuard and the individual Defendants that were filed in the Southern District of Florida. On August 23, 1999, the Plaintiffs filed their consolidated and amended class action complaint. After resolution of the Defendants' Motion to Dismiss and the subsequent Motion for Reconsideration, the Plaintiffs filed the Second Amended Complaint presently before the Court. All allegations referred to herein shall be taken from the Second Amended Complaint.

3. Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rule and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b).

4. Rule 10b–5 makes it unlawful "[t]o make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5.

5. Section 20(a) provides that "[e]very person who, directly or indirectly, controls any person

liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."

6. Hereinafter, the Court will use "Second Am. Compl. ¶___" to cite to relevant portions of the Second Amended Class Action Complaint.

7. The Court takes the factual allegations stated in the complaint as true for purposes of a Motion for Class Certification. See Medine v. Washington Mutual, FA, 185 F.R.D. 366, 369 (S.D.Fla. 1998).

8. The Class excludes: "(a) The Defendants named in the Complaint and their immediate families; (b) the officers and directors of Cyber-Guard and their immediate families; (c) the legal representative, heirs, ... and assigns of all such persons; and (d) any entity in which any Defendant has or had a controlling interest." Amended Cert. Memorandum, p. 3–4; Second Am. Compl., ¶ 56.

sentatives of the class. The Plaintiffs assert that certification is appropriate because they have satisfied all requirements for a class action set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

### A. *The Parties*

As noted above, the Lead Plaintiffs in this matter (Govic, Brown, Miller, and Meshulam) purchased CyberGuard stock during the Class Period at market prices that were inflated due to Defendants' misrepresentations and omissions. *See* Second Am. Compl. ¶ 35.

The Defendants in this case include: (a) Robert Carberry, Chairman of the Board and Chief Executive Officer of CyberGuard from June 1996 until August 24, 1998, when he was suspended by the Company for his role in the fraudulent conduct alleged by the Plaintiffs; (b) William D. Murray, Chief Financial Officer ("CFO") for CyberGuard from November 19, 1997 until August 24, 1998, when he was also suspended by the Company for his role in the alleged fraudulent scheme; (c) Patrick O. Wheeler, CyberGuard's CFO from April, 1996 until November, 1997; (d) Shelton James, the director of CyberGuard; and (e) CyberGuard Corporation (collectively the "Defendants"). More specifically, CyberGuard is headquartered in Fort Lauderdale, Florida, and sells firewall software "designed to protect computer networks from 'hackers' and to increase the security of commerce conducted over the internet." Second Am. Compl. ¶ 36. CyberGuard Corporation was a publicly traded company on the NASDAQ stock exchange at all material times relevant to this litigation. Second Am. Compl. ¶ 39.

### B. *Allegations of Fraud*

In general, Plaintiffs allege that the Defendants perpetrated a massive fraudulent scheme against investors during the Class Period in order to inflate CyberGuard's financial results and attract investors and potential acquirors by distributing uniform false representations in CyberGuard's SEC filings, press releases, and articles. *See* Second Am. Compl. ¶¶ 3–4, 275–319. Specifically, the Defendants materially overstated CyberGuard's revenues, operating income, net

income, gross profits, accounts receivable, current assets and total assets. *See* Second Am. Compl. ¶¶ 4, 64–220. Additionally, the Defendants materially understated CyberGuard's research and development ("R & D") as well as selling, general and administrative expenses ("SG & A"). *Id.* Moreover, the Defendants violated generally accepted accounting principles ("GAAP") by improperly recognizing revenue from purported "sales" of its software products to large resellers who acted as middlemen in the distribution of the Company's products to end users. Second Am. Compl., ¶ 7. In connection with the Company's dealings with international resellers, which constituted 60% of the Company's sales in 1995 and 1996, CyberGuard would recognize a shipment to a reseller as a sale even though the resellers were not obligated to pay for the software until such time as it sold the software to the end user. Second Am. Compl., ¶ 9. This revenue recognition policy violated GAAP and was never disclosed to CyberGuard investors. Second Am. Compl., ¶ 10. As a result, every statement the Defendants made during the Class period concerning the Company's revenues, gross profits, gross margins, operating profits, net profit, accounts receivable, current assets, and total assets were materially misleading. *Id.*

Defendants eventually began to disclose CyberGuard's accounting fraud on August 24, 1998. At that time, CyberGuard announced that the Company had improperly recognized approximately $2.5 million in revenues, principally during the third quarter of 1998. Second Am. Compl., ¶¶ 14, 241. In January of 1999, Defendants amended it prior position and disclosed to the public that CyberGuard had actually overstated revenues by $3,807,000 for the first three quarters of fiscal 1998. Second Am. Compl., ¶¶ 16, 259.

Cyberguard yet again revised its accounting statements when, on July 30, 1999, Defendant admitted that the Company, in fact, would have to revise results for the first three quarters of 1998 as well as every reporting period of fiscal 1997, reducing revenue by $3.6 million and net income by $8,793,000. Second Am. Compl., ¶¶ 18, 263–

72. The revelation of Defendants' true financial status led to a drop in stock price. On August 24, 1998 alone, CyberGuard stock fell from $6⅟₁₆ per share to $1⅞ per share. Second Am. Compl., ¶ 244. Moreover, based upon these disclosures, the SEC commenced an investigation of the Defendants' conduct. Ultimately, CyberGuard's stock was delisted from NASDAQ. Second Am. Compl., ¶¶ 28, 40. As a result, investors who purchased CyberGuard common stock during the Class Period are no longer able to trade the Company's stock in an easily accessible market. Second Am. Compl., ¶ 28. CyberGuard has been unable to regain its NASDAQ listing to date. *See* Maya Sexana Aff., ¶ 5.

Pursuant to these facts, Plaintiffs seek class certification and remedies against the Defendants for violations of §§ 10(b) and 20 of the Exchange Act asserting they have satisfied all prerequisites pursuant to Federal Rules of Civil Procedure 23(a) and (b). In particular, Plaintiffs allege that they are entitled to a presumption of reliance under the "Fraud on the Market" theory and that, accordingly, common questions of law or fact predominate entitling them to certification under Rule 23(b)(3). *See* Second Am. Compl., ¶¶ 425–27; Class Certification Reply. The Defendants oppose Plaintiffs' motion and argue certification is not appropriate in this case because (1) the Lead Plaintiffs cannot adequately represent the interests of the proposed class and do not maintain "typical" claims and defenses in accordance with Rule 23(a); (2) the market for CyberGuard stocks was not efficient during the Class Period, thereby causing individual questions of reliance to predominate over common questions in violation of Rule 23(b)(3);[9] and (3) the Plaintiffs failed to comply with the early notice provisions of the Private Securities litigation Reform Act (the "PSLRA") contained in 15 U.S.C. § 78u–4(a)(3)(A)(i) by publishing notices that omitted the first eleven (11) months of the proposed class period, thereby precluding certification of the contemplated class. Upon a careful review of the Second Amended Complaint, the parties' arguments, as well as, the relevant record evidence and case law, this Court finds that Plaintiffs' Amended Motion for Class Certification should be granted.

## II. CLASS CERTIFICATION STANDARD

To qualify as a class under Rule 23 of the Federal Rules of Civil Procedure, the Plaintiffs must initially satisfy the four thresholds requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable (numerosity); (2) questions of law or fact common to the class must exist (commonality); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality); and (4) the representative parties must fairly and adequately protect the interests of the class (adequacy of representation). Plaintiffs seeking to represent the class bear the burden of establishing that all four requirements have been met. *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 721 n. 2 (11th Cir.1987), *cert denied,* 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 421 (1988); *Gilchrist v. Bolger,* 733 F.2d 1551, 1555 (11th Cir.1984) (A class action may only be certified "if the Court is satisfied, after a rigorous analysis, that the prerequisites of Fed. R.Civ.P. 23(a) are met"). These prerequisites are mandatory and the failure to establish any one is fatal to a motion for class action certification.

In addition to meeting the four preliminary requirements in subdivision (a), the plaintiffs also must satisfy one of the subsections of Fed.R.Civ.P. 23(b) in order to certify a class. In the instant case, the Lead Plaintiffs seek class certification under Rule 23(b)(3). A class action may be maintained under (b)(3) only where (1) there are questions of law or fact common to the members of the class that predominate over those questions affecting individual members and (2) a class action is superior to other available methods for fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3); *Kirkpatrick,* 827 F.2d at 721 n.2.

In determining whether the named Plaintiffs have met their burden under Rule 23,

---

9. In particular, Defendants argue that Plaintiffs may not rely on the presumption of reliance as the fraud in the market theory is inapplicable where the market is inefficient.

the Court shall not consider the merits of the Plaintiffs' claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732, 748 (1974); *Kirkpatrick*, 827 F.2d at 722; *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir.1984). Rather, the Court's inquiry generally should be limited to whether the requirements of Rule 23 have been satisfied. However, the Eleventh Circuit has held that this principle should not be "talismanically invoked to artificially limit a trial court's examination of facts necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements." *Love*, 733 F.2d at 1564. Hence, a court may look beyond the complaint to determine whether a motion for class certification should be granted. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740, 752 (1982); *Kirkpatrick*, 827 F.2d at 722. In particular, relevant to a determination under Rule 23(b)(3), a court may look beyond the allegations of a complaint, in a limited matter, "in order to determine whether individual issues of reliance will predominate this action over questions common to the class. In doing so, the court does *not* 'delve' into the merits of Plaintiffs' proof of reliance" nor assess plaintiffs' likelihood of success on their claims. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 329–30 (S.D.Fla.1996).

It is well-established that class actions are "a particularly appropriate means for resolving securities fraud actions." *In re Amerifirst Securities Litigation*, 139 F.R.D. 423, 427 (S.D.Fla.1991). Moreover, " 'the interests of justice require that in a doubtful case . . . any error, if there is to be one should be committed in favor of allowing a class action.' " *Id.* (quoting *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir.1968), *cert denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969)).

## III. ANALYSIS

### A. *Numerosity*

 Rule 23(a)(1) requires that a Class shall not be so large that joinder would be impracticable. In order to establish numerosity for class certification, Plaintiffs need not present an exact number for the class. There is no fixed rule. Rather, what constitutes numerosity depends on the specific facts of each case. *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D.Fla.1992). The Court may consider geographic dispersion of class members and judicial economy in its determination. *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir.1986). Generally, "less than twenty-one is inadequate, more than forty adequate." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986)(quoting 3B Moore's Federal Practice § 23.05(1)n.7. (1978)). Moreover, the "numerosity requirement is assumed to have been met in class action suits involving nationally traded securities." *Id.* (citing *In re Amerifirst Securities Litigation*, 139 F.R.D. at 427); *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1039 (5th Cir.1981).

Initially, the Court notes that the Defendants do not dispute that the Plaintiffs have satisfied the numerosity requirement of Rule 23(a).[10] While the Plaintiffs do not allege the exact number of Class members in the complaint, the Plaintiffs clearly assert that there are "thousands of class members" who may be "identified from records maintained by CyberGuard." Second Am. Compl., ¶ 57. Plaintiffs also allege that as of September 1996, there were approximately 7,464 record holders of common stock and 6,998 record holders of common stock as of September 1997, pursuant to Company 10–K forms. Second Am. Compl., ¶ 59. Further, at the end of the Class Period, the Company maintained outstanding shares numbered at least 8,775,228. Second Am. Compl., ¶ 58; *See Tapken v. Brown*, No. 90–691–CIV–Marcus, 1992 WL 178984 at *27 (S.D.Fla. March 13, 1992)(finding numerosity prong established where Plaintiffs do not allege a precise or estimated number of class members, but contend that the company held more than 8.4 million shares of outstanding common stock at all relevant times).

---

10. In their opposition, Defendants assert that they "do not jointly directly address . . . Plaintiffs' satisfactions of Rule 23(a)'s numerosity or commonality requirements." Class Certification Response, p. 2 n.1.

As noted above, courts generally assume that the numerosity prong has been met where a class action involves nationally traded securities. *Zeidman,* 651 F.2d at 1039. In the present case, the Court finds that, based upon the aforementioned allegations in the Complaint and the pertinent case law, the Plaintiffs have satisfied their burden of showing that joinder of thousands of shareholders in this case would be impracticable.

## B. *Commonality*

■ Defendants also do not directly dispute that the Plaintiffs have satisfied the commonality prong of Rule 23(a) of the Federal Rules of Civil Procedure. *See* Response, p. 2n.1. Commonality requires that there is at least one issue affecting all or a significant number of proposed class members. *Stewart v. Winter,* 669 F.2d 328 (5th Cir.1982); *Kreuzfeld v. Carnehammar,* 138 F.R.D. 594, 599 (S.D.Fla.1991). The threshold for commonality is not high. *Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101, 1106 (5th Cir. 1993). Moreover, factual differences between class members do not preclude a finding of commonality, as long as common questions of law exist. *Tapken,* 1992 WL 178984, at *27; *CV Reit,* 144 F.R.D. at 696; *see also Walco Investments, Inc.,* 168 F.R.D. at 324 (not all of the questions of law or fact raised by the case have to be common to all the plaintiffs). Rather, the law requires only that the claims actually litigated in the lawsuit must be those fairly represented by the named plaintiffs. *Cox,* 784 F.2d at 1557 (citing C. Wright & A. Miller *Federal Practice & Procedure,* § 763 at 603); *see also Johnson v. American Credit Co. of Georgia,* 581 F.2d 526, 532 (5th Cir.1978). Where a common scheme is alleged, common questions of law or fact will exist. *See Green v. Wolf Corp,* 406 F.2d 291, 298 (2nd Cir.1968); *Powers v. Stuart–James Co., Inc.,* 707 F.Supp. 499, 502 (M.D.Fla.1989); *Haitian Refugee Center, Inc. v. Nelson,* 694 F.Supp. 864, 877 (S.D.Fla.1988).

Plaintiffs have alleged that Defendants perpetrated a massive fraudulent scheme against investors through uniform misrepresentations and omissions in filings made with the SEC, in CyberGuard press releases, and in other documents. Second Am. Compl., ¶¶ 64–220. As a result, Plaintiffs contend that the following questions of fact and law *inter alia* are common to all members of the class: (1) whether the Defendants violated federal securities laws; (2) whether Defendants' statements to the investing public misrepresented or failed to disclose material facts about CyberGuard's business and operations; (3) whether the market price of CyberGuard common stock was artificially inflated during the class period due to material omissions and/or misrepresentations; and (4) whether Defendants' misrepresentations or omissions caused damages suffered by Plaintiffs and members of the class. Am. Memorandum for Class Cert., pp. 10–11.

Since this case involves allegations of a unified scheme to defraud investors through misrepresentations and omissions of information and because several common questions of law exist, the Court concludes that, like many other similar securities cases in this Circuit, that the commonality prong has been satisfied in this case. *See e.g. Walco Investments,* 168 F.R.D. at 325 (where plaintiffs alleged unified scheme to defraud investors throughout the complaint, common questions are usually found by courts); *In re Amerifirst,* 139 F.R.D. at 428 (holding commonality established where Plaintiffs Rule 10b–5 claims allege Defendants participated in "common fraudulent scheme to artificially inflate [stock price] .... and mislead investors," thereby proving both factual and legal issues are essentially identical and that commonality is present). In sum, the commonality requirement of 23(a)(2) is met here because there are a substantial number of questions of fact and law noted above that are common to the class. Although individual issues may be raised in this action, the Court does not find these issues outweigh the significant number of common questions. The effect of potential unique defenses and the issue of whether common questions predominate, will be discussed in detail below in the Court's analysis of "typicality" and Rule 23(b)(3).

## C. *Typicality*

Under the third requirement of rule 23(a), the named Lead Plaintiffs must present

claims or defenses that are typical of the claims of the class. Fed.R.Civ.P. 23(a)(2). Proof of typicality requires more than general conclusory allegations. *Walco Investments*, 168 F.R.D. at 326. The central inquiry in determining whether a proposed class has "typicality" is whether the "class representatives' claims have the same essential characteristics as the claims of the other members of the class." *In re Amerifirst Securities Litigation*, 139 F.R.D. 423, 428 (S.D.Fla.1991)(citing *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985)). A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984). The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiff and other class members, unless the factual position of the representative markedly differs from that of other members of the class. *Id.* "Any atypicality or conflict between the named Plaintiffs' claims and those of the Class 'must be clear and must be such that the interests of the class are placed in significant jeopardy.'" *Walco Investments*, 168 F.R.D. at 326 (quoting *Sley v. Jamaica Water & Utilities, Inc.*, 77 F.R.D. 391, 394–95 (E.D.Pa.1977)).

In their opposition, Defendants raise several arguments as to why the named Plaintiffs Miller, Meshulam and Govic are atypical. First, in regard to Lead Plaintiff Meshulam, Defendants argue that his claims are not typical to those of the class members because he did not rely upon CyberGuard's stock price during the relevant class period. Next, as to Lead Plaintiff Plaintiff Govic, Defendants contend he is atypical because Govic purchased CyberGuard stock after the alleged misrepresentations at issue were disclosed. Finally, in regard to Lead Plaintiff Miller, Defendants argue that Miller lacks standing to pursue claims in this action be-

cause he never purchased common stock of CyberGuard for himself during the Class Period. Each of the name Plaintiffs shall be discussed in turn below.[11]

### 1. *Plaintiff Meshulam*

The Defendants argue that Meshulam is atypical because he did not rely upon CyberGuard's stock price during the relevant Class Period. According to the Defendants, Meshulam admitted in deposition testimony that he would have purchased common stock no matter the price. *See* Response, pp. 5–6 (citing Meshulam Depo., p. 71). Since Meshulam did not rely solely on the price of the stock, Defendants contend that his "lack of reliance" rebuts any presumption of reliance founded on the fraud-on-the market theory set forth in *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). In sum, Defendants argue Meshulam is atypical because he is in a different legal and factual position from the rest of the Class.

In response, Plaintiffs assert that Meshulam's claims are, indeed, typical because, like most of the investors in the class, Meshulam testified that (1) he purchased stock after perusing certain publicly available materials about CyberGuard; and (2) he had no reason to believe at the time of purchase that the Defendants withheld or misrepresented any information. Reply, p. 2 (citing Meshulam Depo., pp. 69–74; 164–170). According to the Plaintiffs, Meshulam, therefore, relied on the integrity of the market and is subject to the presumption of reliance. *Id.*

In *Basic*, the Supreme Court explains that the "fraud on the market" reliance presumption is rebutted upon any "showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price." *Id.* at 248.[12] For example, the presumption may be rebutted if a stockholder purchases or sells shares after he or she learns that a corporation's public

---

11. The Defendants do not oppose representation of the class by Michael Brown on the basis of atypicality. Accordingly, upon review of the complaint, the record and relevant case law, the Court finds that Brown has satisfied the typicality requirement.

12. The "fraud on the market" theory is discussed in detail below.

statements were false. *Id.* at 248–49, 108 S.Ct. 978. Thus, insider information or other facts must be presented to show a severance of a link between the misrepresentation and the plaintiff's decision to trade.

The Court concurs with the Plaintiffs that Meshulam is typical of the Class despite Defendants' argument that he did not rely on the price of the stock. The deposition testimony before the Court does not establish that Meshulam was aware of any insider information which would show that he did not rely on the integrity of the market. Rather, Meshulam purchased the stock after receiving information regarding CyberGuard from an analyst, Mr. Belesis of First Asset. Meshulam Depo., pp. 68–72. Based on the information he received, he testified he probably would have purchased the stock without regard to the price at the time. Meshulam Depo., p. 71. However, Meshulam did not have any reason to believe that the Defendants were withholding or misrepresenting any information at the time of his purchase. Meshulam Depo., p. 169. Moreover, Meshulam testified that he would not have purchased the stock had he known CyberGuard overstated its revenues and earnings. Meshulam Depo., p. 170. Hence, it is clear that Meshulam, like other class members, relied on the integrity of the market because he presumed the market price was validly set. *See Anderson v. Bank of the South, N.A.,* 118 F.R.D. 136, 143 (M.D.Fla.1987)(explaining that fraud on market theory relies on two assumptions, including "(2) the average investor does not need to read and review all available information because he relies on the *integrity* of the market price in securities transactions").

Further, courts facing similar circumstances, where a named Plaintiff did not rely on stock price, have held that such evidence alone does not constitute a rebuttal of the "fraud-on-the-market" theory. For example, in *HSL, Inc. v. Daniels,* 1983 WL 1385, 1983 U.S. Dist. Lexis 14322 (N.D. Ill. Aug. 25, 1983), a plaintiff similarly testified that "it didn't matter that much to me what the price of it was ... I don't think the price influence (sic) me not to buy or buy it." *Id.* at *11. In denying Defendants' motion to dismiss, the district court found:

> Although this testimony makes clear that the price *itself* may have been an insignificant factor in [the plaintiff's] decision, the price *per se* is not determinative factor in the fraud on the market theory. Rather, it is the integrity of the market price. As the Court in *Mottoros* stated, the plaintiff must rely "upon the *integrity* of the market price of the security which was distorted by the impact of the particular misstatement or omissions." When the investor goes into the market place, he is relying on the belief that the price of the stock, *whatever* it *is,* has not been affected by deception. *HSL, Inc.,* at *11 (citations omitted).

Accordingly, this Court finds that Meshulam's statement that he probably would have bought CyberGuard stock despite the price is not sufficient to hold Meshulam atypical at this stage of the litigation. As noted above, minor factual differences do not render a claim atypical if the claim arises from similar course of conduct giving rise to the claims of the class members. *Walco,* 168 F.R.D. at 326–27 (quoting *Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912, 923 (3rd Cir. 1992)). In this case, the Plaintiffs have alleged that a fraudulent scheme perpetrated by the Defendants caused injury to all proposed members of the class. Meshulam, like others, would not have purchased stock, had he known. of CyberGuard's misrepresentations and omissions. Thus, as Meshulam and the class members relied on the integrity of market and since the allegations of the complaint suggest a common course of conduct by the Defendants against the plaintiffs, the typicality requirement has been satisfied.[13]

---

13. It also should be noted that courts in this circuit have held that the possibility of a unique defense (i.e. the named plaintiffs did not rely on the integrity of the market) does not necessarily foreclose class certification. *In re Amerifirst,* 139 F.R.D. at 428. Indeed, this Court has held that a representative's "degree of reliance will [not] preclude satisfaction of the typicality requirement ... [a]s long as Plaintiffs assert, as they do here, that Defendants committed the same wrongful acts in the same manner against all members of the class." *Id.* at 429 (quoting *Kennedy v. Tallant,* 710 F.2d 711, 717 (11th Cir. 1983)). Hence, typicality is established as to

## 2. *Plaintiff Govic*

■ Plaintiff Govic purchased shares of CyberGuard common stock on two occasions: (1) in or about April 1998, prior to the disclosure of Defendants' alleged misrepresentations and (2) after the misrepresentations were revealed and the price of CyberGuard stock dropped dramatically. *See* Govic Depo., p. 36. Plaintiff Govic testifies that he bought additional CyberGuard stock after it plummeted all the way down to about a dollar fifty ($1.50) in order to "dollar cost average the initial cost." Govic Depo., p. 48. In sum, Plaintiff wanted to double his amount of shares in order to "cost average in half." *Id.* According to Govic, only his initial purchase of 300 shares is the subject of the instant law suit. *Id.*

Defendants, however, argue that Govic is atypical of the proposed class because he purchased CyberGuard stock after the alleged misrepresentations at issue where disclosed. Response, p. 6. According to the Defendants, because Govic purchased stock after he knew about the Defendants alleged misrepresentations, he is subject the defenses of waiver, ratification, estoppel and/or lack of materiality. Defendants cite various non-binding cases to support their position that Govic is subject to unique defenses which could become the focus of the litigation to the detriment of the class. *See, e.g., Rolex Employees Retirement Trust v. Mentor Graphics Corp.,* 136 F.R.D. 658, 663 (D.Or.1991) (holding where a Plaintiff continues to trade after alleged misrepresentations of defendants are revealed, such actions rebut any presumption of reliance and may raise several arguable unique defenses which could become the focus of litigation if plaintiff is named class representative). According to the Defendants, these defenses preclude Govic from becoming a class representative on behalf of the proposed class.

After reviewing the allegations of the complaint, the relevant law, and the parties' arguments, the Court concludes that Govic is not atypical due to alleged "unique defenses." First, several courts within this circuit hold that typicality "is not defeated by specific defenses or counterclaims to the named

plaintiff's claim." *Hammett v. American Bankers Insurance Co. of Florida,* 203 F.R.D. 690, 694 (S.D.Fla.2001) (citations omitted). This is especially the case where the lead plaintiff alleges that he and the proposed class members were "subject to a pattern or fraudulent conduct and suffered damages arising out of the same violations of federal and common law." *Id.* at 695; *see also Medine,* 185 F.R.D. at 370 ("typicality is not voided by the presence of specific defenses"); *In re Amerifirst Securities Litigation,* 139 F.R.D. at 428 ("the possibility that a unique defense exists against the claim of a representative does not necessarily foreclose class certification").

In the case at bar, the Plaintiffs allege that the Defendants' perpetrated a massive fraudulent scheme through the same misrepresentations and omissions in order to inflate CyberGuard's financials and mislead investors. While Govic bought shares after the misrepresentations were revealed, he also suffered loss, similar to all other class members when he purchased CyberGuard stock in April 1998, as a result of a pattern of fraudulent conduct arising out of the same violations of federal securities laws. Thus, although some factual differences exist between Govic and other members of the class, the court does not find that the purchase after the revelation of fraud bars a finding of typicality. *See Hammett,* 203 F.R.D. at 695. Indeed, the Defendants provide, and the Court finds persuasive, several cases that note that "averaging down"—the purchase of stock subsequent to a materially adverse disclosure—is a common technique utilized by Plaintiffs and cannot be used to defeat typicality. *See e.g., In re Select Comfort Corp.,* 202 F.R.D. 598, 607 n. 12 (D.Minn.2001)(holding the fact that some of the 10b-5 subclass members at issue employed distinctive trading strategies did not render them atypical of the class). Accordingly, the Court finds that Govic's trading strategy does not preclude a finding of typicality on Plaintiffs' Motion for Class Certification.

## 3. *Plaintiff Miller*

■ The Eleventh Circuit has held that there "cannot be adequate typicality between

Meshulam since he maintains similar grievances to the class members.

a class and a named representative unless the named representative has individual standing to raise the legal claims of the class." *Prado–Steiman v. Bush,* 221 F.3d 1266, 1279 (11th Cir.2000). Named Plaintiff Miller was the sole owner and president of a mortgage brokerage operation, Key Access Mortgage ("Key Access") during relevant times of the Class Period. Miller also purchased stock for the account of Key Access. Although Miller was the sole owner and president of Key Access, the Defendants argue that Miller is not typical of the class because he has not been injured by Defendants' misrepresentations and omissions as Miller did not personally own CyberGuard stock. In short, Defendants contend that Miller lacks standing and is, therefore, subject to a unique defense which renders him atypical of the class.

The Plaintiffs respond that Miller is typical of the class and may be a class representative since many courts have held that parties who, like Miller, purchase securities on behalf of other persons, may serve as class representatives. In particular, Plaintiffs rely in relevant part on *EZRA Charitable Trust v. Rent–Way, Inc.,* 136 F.Supp.2d 435 (W.D.Pa.2001) to support standing. In *EZRA,* several proposed lead plaintiffs argued that another suggested lead plaintiff, Cramer, an investment advising firm, lacked standing because it purchased securities for a client rather than on its own behalf. The Court, however, rejected their argument and held that the investment firm had standing to be a named lead plaintiff because the firm independently determined which securities to purchase for its clients' accounts. *Id.* at 442. A firm with delegated authority to make investment decisions for clients was found to constitute a "purchaser" under federal securities law with standing to sue in its own name.

The Court concurs with the Defendants that named Plaintiff Miller does not appear to have standing in this matter. The instant case is distinguishable from *EZRA* as Miller is not an investment advisor who purchased stocks on behalf of a client. Rather, Miller was the President and sole shareholder of Key Access—a separate corporate entity.

Courts have noted in various contexts that a plaintiff may not assert a claim for damages suffered to a corporation, even where such individual plaintiff is the sole shareholder or president of the corporation. *See e.g. Grimm v. Borough of Norristown,* 226 F.Supp.2d 606 (E.D.Pa.2002) (citing cases). Accordingly, since Miller may not individually assert a claim on behalf of a corporation and because he did not purchase stocks on his own behalf, he appears atypical of the class members.

Nevertheless, Plaintiffs assert in their Reply that, if deemed necessary, they are willing and ready to formally substitute Key Access for Miller. It is undisputed that Key Access purchased CyberGuard common stock during the relevant Class Period. At oral argument, Defendants suggested that they would consider substitution upon further discovery. As the Court does not find Miller's claims to be typical to those of the class at this stage, the parties may file memoranda of law regarding the substitution of Key Access Plaintiff Miller as set forth in detail below.

### D. *Adequacy of Representation*

The final requirement of Rule 23(a) provides that "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). In determining whether named plaintiffs will sufficiently represent a potential class with vigor in accordance with the requirement of Rule 23(a)(4), the Court should consider (1) " 'whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and ... (2) whether plaintiffs have interests antagonistic to those of the rest of the class.' " *Kirkpatrick,* 827 F.2d at 726 (quoting *Griffin v. Carlin,* 755 F.2d 1516, 1532 (11th Cir.1985)). In securities cases, where the class is represented by competent counsel, class certification should not be denied "simply because of a perceived lack of subjective interest on the part of the named plaintiffs unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case." *Kirkpatrick,* 827 F.2d at 728.

In their opposition to class certification, Defendants do not dispute that plaintiffs' counsel are experienced and competent. The

record demonstrates that Plaintiffs' attorneys have significant experience in federal securities class actions. *See* Maya Saxena Aff., ¶¶ 7–10. Accordingly, Plaintiffs have satisfied the first of the above-referenced factors—that counsel are qualified, experienced, and generally able to competently conduct the present proposed class action.

The Defendants contest, instead, whether the named Plaintiffs themselves may act as adequate class representatives. In particular, Defendants assert the named plaintiffs (a) lack involvement or knowledge regarding this litigation and/or (b) lack credibility. Defendants' arguments are without merit. First, according to the Defendants, Brown has not been actively involved in this matter. Specifically, Defendants assert that Brown *inter alia* (1) did not review any of the filings in this case; (2) did not sign any written fee agreement or retention letter with counsel and (3) did not and has not given counsel any directions as to settlement in the case as opposed to proceeding to trial. *See* Response, p. 10.

■ As discussed above, this Circuit has held that where a class is represented by competent counsel, class certification should not be denied "simply because of a perceived lack of subjective interest on the part of the named plaintiffs unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case." *Kirkpatrick,* 827 F.2d at 728. The record shows that Brown has not abdicated the conduct of this case to his attorneys. Brown has reviewed the complaint and other documents received from Plaintiffs' counsel. Brown Depo., p. 71. Plaintiff Brown is also familiar with the facts underlying his claims and the relevant events in this litigation, including the names and roles of the Defendants as well as the Court's decisions regarding Defendants' motions to dismiss and motion for

reconsideration. Brown Depo., pp. 86–90. Further, Brown has participated in this action where necessary, namely traveling to be deposed in Miami for this case. Brown Depo., p. 7. Accordingly, it is clear that Brown's participation in this action is not so minimal as to fail to satisfy the requirement of Rule 23(a)(4).

■ Defendants' arguments regarding the credibility of the named Plaintiffs are similarly unavailing. Defendants assert that Plaintiff Brown lacks credibility because he failed to disclose his involvement in the present case in another class action in the Eastern District of Texas (Triton Energy Case). Moreover, Defendants contend Plaintiffs Govic and Meshulam provided demonstrably false deposition testimony. However, the District Court for the Southern District of Florida has previously held that when determining whether or not to certify a class, "any inquiry concerning a [Plaintiff's] credibility is an impermissible examination of the merits of the case." *Powers v. Government Employees Insurance Co.,* 192 F.R.D. 313, 317 n.6 (S.D.Fla.1998)(citing *Eisen,* 417 U.S. at 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732). Accordingly, the Court finds that it is inappropriate to determine the credibility of named Plaintiffs Brown, Govic, and Meshulam at this stage of the litigation. Any credibility concerns may be appropriately raised and addressed at a later phase of litigation or at trial upon consideration of the merits of Plaintiff's claims. Accordingly, the Court finds that Plaintiffs have satisfied the adequacy requirement.[14]

**E. Rule 23(b)(3): Whether Common Question of Law and Fact Predominate Over Questions Solely affecting the Individual Members of the Class**

A class action may be maintained under (b)(3) where (1) there are questions of law or

---

**14.** Even assuming credibility may be considered in determining class certification, the Court finds that Defendants would not prevail on their arguments. Defendants have failed to demonstrate that Plaintiffs' credibility will face serious challenge. *See e.g. Ockerman v. King & Spalding,* 1998 WL 39937 at *5 (N.D.Ga. March 31, 1988) (holding Plaintiff is adequate class representative as the Defendants failed to demonstrate that Plaintiff's credibility will face serious challenge

at trial). In particular, plaintiffs Govic and Meshulam do not lack credibility to such a degree that they will not adequately represent the proposed class since both plaintiffs simply respond to questions in deposition to extent possible. Plaintiff Brown also disclosed his involvement in the present case to the parties in *Triton Energy* case. All plaintiffs have also remained sufficiently involved in this matter as demonstrated in the record.

fact common to the members of the class that predominate over these questions affecting individual members only, and (2) a class action is superior to other available methods for fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3). The Court will analyze each of these factors separately below.

### 1. Predominance

*Fraud-on-the-Market Theory*

■ As previously discussed, Plaintiffs have brought this proposed class action on behalf of themselves and other purchasers of CyberGuard common stock alleging violations of § 10b of the Exchange Act and Securities and Exchange Commission Rule 10b–5. In order to demonstrate violations of Rule 10b–5, the Plaintiffs must prove reliance on Defendants' misrepresentation. Courts have recognized, however, that in certain contexts reliance may be presumed. The Eleventh Circuit, in particular, has held that a presumption of reliance may exist under the "fraud on the market" theory where the plaintiffs in class actions allege that "fraudulent misrepresentations or omissions ... affected security prices on a developed open market." *Lipton v. Documation, Inc.,* 734 F.2d 740, 745 (11th Cir.1984). In such a market, "it is reasonable to assume that misinformation disseminated into the marketplace will affect the market price." *Id.* at 745–46. As a result, a plaintiff may be allowed to allege that he "relied on the integrity of the market prices in purchasing the securities and then shift the burden to the defendant to disprove reliance." *Id.* at 746 (citing *Blackie v. Barrack,* 524 F.2d 891, 907 (9th Cir.1975)).

In their Second Amended Complaint, Plaintiffs assert that the class is entitled to a presumption of reliance by virtue of the Fraud-on-the-Market doctrine because the "market for CyberGuard common stock was efficient i.e. the market promptly digested information regarding CyberGuard's operations and prospects from publicly available sources and reflected such information in the price of CyberGuard common stock." Complaint, ¶ 425. Due to the applicability of this theory, Plaintiffs assert that common issues of the class members outweigh any individual

factual questions. Defendants argue in opposition that the Plaintiffs fail to establish the predominance requirement under Rule 23(b)(3) because individual questions of reliance outweigh any common issues of the class since the CyberGuard market was inefficient during all relevant times of the class period.

In *Basic,* the Supreme Court explained that class members may rely on the integrity of the market under the fraud of the market theory where a market is open and efficient:

> "The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business .... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements .... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations."

485 U.S. at 241–42, 108 S.Ct. 978, 99 L.Ed.2d 194 (citation omitted); *see also Lipton,* 734 F.2d at 740.

The Supreme Court concluded that presumption of reliance could be created due to the nature of "modern securities markets." According to the Court, "the modern securities markets, literally involving millions of shares changing hands daily, differ from the face-to-face transactions contemplated by early fraud cases, and our understanding of Rule 10b–5's reliance requirement must encompass these differences." *Id.* at 243–44, 108 S.Ct. 978. The Court elaborated:

> "In face to face transactions, the inquiry into an investor's reliance upon information is into the subjective pricing of that information by that investor. With the presence of a market, the market is interposed between seller and buyer and, ideally, transmits information to the investor in the processed form of a market price. Thus the market is performing a substantial part of the valuation process performed by the investor in a face-to-face transaction.

The market is acting as the unpaid agent of the investor, informing him that given all the information available to it, the value of the stock is worth the market price."

*Id.* (citation omitted). Upon the existence of an efficient market, the *Basic* Court found that a rebuttable presumption applies where "persons who had traded shares had done so in reliance on the integrity of the price set by the market, but because of petitioner's material misrepresentations that price had been fraudulently depressed." *Id.* at 245, 108 S.Ct. 978. Without such a presumption, the plaintiff would be required to "show a speculative state of facts, i.e., how he would have acted if omitted material information had been disclosed, or if the misrepresentation had not been made, [ ] placi[ing] an unnecessarily unrealistic evidentiary burden on the Rule 10b–5 plaintiff who has traded on an impersonal market." *Id.* In order to overcome this presumption, Defendants must provide evidence that "the elements giving rise to the presumption" were not present, or by showing that "the misrepresentation in fact did not lead to a distortion of the price or that an individual plaintiff traded or would have traded despite his knowing the statement was false." *Id.* at 248, 108 S.Ct. 978. In short, the presumption of reliance established in *Basic* is founded on the existence of an impersonal, efficient market.

Several courts since *Basic* have considered under what particular circumstances or securities settings a classwide presumption of reliance should apply under the fraud on the market doctrine. In one of the most thorough discussions of this issue, the Sixth Circuit provided the following framework for this inquiry in *Freeman v. Laventhol & Horwath*, 915 F.2d 193 (6th Cir.1990):

"An open market is one in which anyone, or at least a large number of persons, can buy or sell. A developed market is one which has a relatively high level or activity and frequency, and for which trading information (e.g., price and volume) is widely available. It is principally a secondary market in outstanding securities. It usually, but not necessarily, has continuity and liquidity (the ability to absorb a reasonable amount of trading with relatively small price changes). An efficient market, is one which rapidly reflects new information in price. These terms are cumulative in the sense that a developed market will almost always be an open one. And an efficient market will almost invariably be a developed one." *Cammer v. Bloom*, 711 F.Supp. 1264, 1276 n.17 (D.N.J.1989)(quoting 4 Bromberg & Lowenfels, Securities Fraud and Commodities Fraud § 8.6 (Aug. 1988)).

*Id.* at 198–99. Specifically, the Sixth Circuit has developed five factors to determine whether a security is "traded in an efficient market, justifying the application of fraud on the market theory: (1) a large weekly trading volume; (2) the existence of a significant number of reports by securities analysts; (3) the existence of market makers and arbitrageurs in the security; (4) the eligibility of the company to file an S–3 Registration Statement; and (5) a history of immediate movement of stock price caused by unexpected corporate events or financial releases." *Id.* at 199 (citing *Cammer v. Bloom*, 711 F.Supp. 1264, 1286–87). Other courts have applied additional factors on the basis of economic literature, including: "(1) the capitalization of the company; (2) the bid-ask spread of the stock; and (3) the percentage of stock not held by insiders (the 'float')." *Krogman v. Sterritt*, 202 F.R.D. 467, 474 (N.D.Tex.2001)(citing *Serfaty v. Int'l Automated Sys.*, 180 F.R.D. 418, 423 (D.Utah 1998)).[15]

Defendants argue that these factors mitigate against the application of the presumption of reliance under a fraud-on-the-market theory. On the other hand, Plaintiffs assert that an application of these factors clearly shows a classwide presumption of reliance is appropriate. Upon a review of the parties' arguments and relevant case law, the court concludes that the Plaintiffs have provided sufficient evidence at this stage of the litiga-

**15.** The Court notes that the Southern District of Florida has applied the factors delineated in *Freeman* and *Cammer* as discussed above. *See In re Amerifirst Securities Litigation,* 139 F.R.D. at 430. Nevertheless, the Court shall also take into account the additional factors raised by the Defendants.

tion to proceed on the "Fraud on the Market" theory since the evidence supports the position that CyberGuard stock was traded in an efficient market. Each of the relevant factors previously described are discussed in turn below.

### a. *High Market Volume*

The Plaintiffs have submitted the expert testimony of Professor Atulya Sarin in support of its "Fraud on the Market" position that CyberGuard stock traded in an efficient market. In opposition, Defendants have provided the expert testimony of Dr. Thor Bruce. Mindful that the Court may not rule on the merits of Plaintiffs' "Fraud of the Market" theory on class certification, the Court finds that the evidence provided by Plaintiffs' expert is adequate for certification on the basis of an efficient market although much of the evidence is disputed by Defendants' expert. A final determination on the merits may be more appropriately considered on summary judgment or trial. In addition, class certification may be altered or amended, where necessary, prior to a decision on the merits. *See* Fed. R. Civ. Proc. 23(c)(1).

In *Freeman*, the Sixth Circuit held that application of the "fraud on the market" theory was inappropriate in a primary market for newly issued municipal bonds as such a market was not efficient or developed. In so holding, the Court noted, considering the *Cammer* factors, that, in contrast, securities traded in national secondary markets such as the New York Stock Exchange are usually "well suited for application of the fraud on the market theory." 915 F.2d at 199. Accordingly, NASDAQ, the market in which CyberGuard stock was traded, is more likely than not to be considered an efficiently traded market. Moreover, while the Sixth Circuit did not separately analyze each of the *Cammer* factors delineated above in *Freeman*, the district court in *Cammer* held that "[t]urnover measured by average weekly trading of two percent or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one." 711 F.Supp. at 1286.

The Plaintiffs have demonstrated that this factor favors a preliminary finding of an efficient market for purposes of class certification. Plaintiffs have submitted evidence that trading volume for CyberGuard was over 72 million shares during the class period, with weekly trading volume at 795, 687 shares, or ten (10%) of the total shares outstanding. *See* Sarin Report, ¶ 18. Defendants, however, argue that Dr. Sarin's report is inaccurate as the report does not reduce the number of shares in response to the "well-recognized overstatement in NASDAQ's reported volume." Response, p. 25. This argument is unavailing since even if one reduces CyberGuard's trading volume by fifty (50%) percent, Plaintiffs would still have a weekly trading volume of 5%, which is well above the 2% recommendation in *Cammer*. Accordingly, this factor weighs in favor of market efficiency. *See In re Amerifirst Litigation*, 139 F.R.D. at 431 (An average turnover of 5.2% was high and supported finding of efficiency).[16]

### b. *Coverage by Securities Analysts*

The number of securities analysts following and reporting on a company's stock during the class period is a persuasive factor as the existence of a significant number of analysts implies that company reports are closely reviewed by investment professionals, who, in turn, make buy/sell recommendations to client investors. *See Cammer*, 711 F.Supp. at 1286. In support of this factor, Plaintiffs assert `that there were over 524 new items available from Dow Jones Interactive which featured CyberGuard in the headline or lead paragraph. *See* Sarin Rebutta Report, ¶ 15. Plaintiff further provides that CyberGuard appeared in news resources such as Dow Jones News Service and Business Wire. Sarin Report, ¶ 28. Additionally, at least five (5) reports were written about CyberGuard by financial analysts. Sarin Report, ¶ 27. Numerous analysts also partici-

---

**16.** The cases cited by Defendants are clearly distinguishable. *See e.g., Krogman*, 202 F.R.D. at 475 (weekly median trading volume of .1% did not support efficiency); *Griffin v. GK Intelligent*

*Systems, Inc.*, 196 F.R.D. 298, 303 (S.D.Texas 2000)(Plaintiffs failed to present any evidence regarding volume of shares traded).

pated in CyberGuard's quarterly conference calls during the Class Period. Sarin Report, ¶ 27.

Defendants respond that five analyst reports during the Class Period simply is insufficient to support market efficiency. Defendants' expert could only locate two (2) analysts who wrote about CyberGuard during the relevant periods. According to the Defendants, Plaintiffs have failed to show a "substantial number" of analysts as recommended in *Cammer*.

The Court finds that the existence of two (2) analysts does not heavily favor a finding of efficiency. Courts addressing the issue of market efficiency in the context of class certification have applied the "fraud of the market" theory where at least six (6) securities analysts issued reports on the stock during the class period. *See In re Amerifirst Litigation*, 139 F.R.D. at 431 (six securities analysts sufficient); *Krogman*, 202 F.R.D. at 475 (inefficient market found, in part, where Plaintiffs allege at least two analysts and few reports); *Griffin*, 196 F.R.D. at 303 (holding no efficient market where Plaintiffs provided no evidence regarding analysts). However, Plaintiffs have shown that CyberGuard was featured in a significant number of news items indicating that information regarding CyberGuard may have been widely distributed, which would support a finding of efficiency. In sum, the Court finds that this factors does not strongly weigh in support of Plaintiffs' position, but does not alone preclude a preliminary finding of efficiency upon a review of all other factors discussed herein.

#### c. *Multiple Market makers*

Market makers match buy and sell orders. The existence of multiple market makers is evidence of market efficiency as market makers ensure the "completion of the market mechanism" by "react[ing] swiftly to company news and report[ing] financial results by buying or selling stock and driving it to a changed price level." *Cammer*, 711 F.Supp. at 1286–86. During the class period, CyberGuard had 15–19 market makers committed to making the market in CyberGuard's stock. Sarin Report, ¶ 25. Indeed, Plaintiffs' expert states that "[e]fficiency of the market for CyberGuard stock was facilitated by market

maker involvement." *Id.* Accordingly, the significant number of market makers initially appears to support a determination of efficiency. *See Cammer*, 711 F.Supp. at 1286 (allegation of multiple market makers may support efficiency). Nevertheless, the Court notes that several courts have held that the number of market makers alone is not particularly probative of efficiency where information is not provided regarding how the market makers reacted to information provided by CyberGuard (i.e. the volume or shares the market makers committed to trade and/or actually traded). *See e.g., In re Amerifirst Litigation*, 139 F.R.D. at 431 (market makers acted swiftly to report financial reports); *Krogman*, 202 F.R.D. at 476 (holding that "mere presence of market makers does not indicate market efficiency")(citing *O'Neil v. Appel*, 165 F.R.D. 479, 501–02 (W.D.Mich. 1996)). While the Court recognizes that additional information would aid the Court in its determination of efficiency for purposes of class certification, it is not essential as the Court is not making a final determination on efficiency and the application of the reliance presumption at this stage. In sum, the Court finds that the existence of multiple market makers in addition to other factors support efficiency and weigh in favor of class certification in this matter pursuant to the "fraud on the market" theory.

#### d. *S–3 Registration Forms*

Whether or not a company is eligible to file a S–3 Registration Form is also helpful in determining whether class certification should proceed on a presumption of reliance. *Cammer*, 711 F.Supp. at 1287. Eligibility to complete a S–3 Form is helpful because the SEC permits registration "only on the premise that the stock is already traded on an open and efficient market, such that further disclosure is unnecessary." *O'Neil*, 165 F.R.D. at 502.

Plaintiffs have satisfied this factor supporting an efficient market because CyberGuard was eligible to file a Form S–3 Registration Statement during the relevant Class Period. In fact, CyberGuard filed Forms S–3 and S–3/A (amended Form S–3) with the SEC on nine occasions. Further, Defendants' expert

also acknowledges that this factor supports market efficiency in this case. Accordingly, this factor weighs in favor of preliminary finding of efficiency and applicability of the "fraud on the market" theory.

### e. Reaction to New Information (History of Immediate Movement)

Empirical facts "showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price" are important factors for the Court when considering the efficiency of a particular market. *See Cammer*, 711 F.Supp. at 1287. In support of a "cause and effect relationship," Plaintiffs provide evidence that stock prices reacted to new and unexpected information in the market. For example, when Cyber-Guard announced on August 24, 1998 that it would restate financial results for the third quarter of fiscal year 1998 and that additional restatements may follow, CyberGuard common stock fell more that 69% in response. Plaintiffs' expert concluded that this decrease in stock price was an "economically significant reaction to new and material information about CyberGuard." Safin Report, ¶ 40; *see also* Sarin Depo., p. 52. Additionally, Plaintiffs' expert testified that additional reactions occurred throughout the Class Period to new and material information. In particular, stock price for Cyber-Guard common stock rose on July 28, 1998 when CyberGuard announced that it had been selected by Microsoft as a Microsoft Certified Solution provider. *See* Sarin Depo., p. 59.

In contrast, Defendants contest Professor Sarin's conclusions arguing that the market for CyberGuard stock is inefficient as the market was highly volatile. According to Defendants' expert Bruce Thor, the market's volatility is evident as stock prices continually fluctuated throughout the Class Period even though there was no new and/or material information or company news. Additionally, CyberGuard common stock often did not react to the company's many announcement and news releases during the Class Period. According to the Defendants, this volatility strongly weighs against finding market efficiency.

Plaintiffs reply that some volatility does not preclude a determination of market efficiency. Plaintiffs' expert, Professor Sarin, asserts that public disclosures alone are not relevant to a finding of efficiency. A market will react only upon *new* and unexpected information, not reports or other disclosures that have repeatedly entered the market. *See* Sarin Depo., p. 52. Plaintiffs further argue that Defendants' comparison of Cyber-Guard stock to some of the largest companies in the United States is inappropriate and fails to show inefficiency. *See* Sarin Rebuttal, ¶ 11.

Upon review of the Plaintiffs' allegations and evidence, the Court finds that Plaintiffs have made a sufficient showing of a cause and effect relationship between new and unexpected information and stock price in this case. As noted above, CyberGuard stock decreased dramatically upon disclosure that financials would be restated. Moreover, CyberGuard stock price reacted favorably to information that CyberGuard was selected as a Microsoft certified Solution provider. While the parties' experts do not agree on all factors and methods to determine efficiency, the Court does not decide the merits of either position at this stage. Instead, the Court simply considers whether the Plaintiffs have set forth evidence sufficient to proceed preliminarily as a class upon the "fraud on the market" theory. Based upon the facts and allegations discussed above, the Court finds that the "cause and effect" relationship appears to favor efficiency and the existence of the presumption of reliance in this matter.

### e. Other factors

Several courts have considered additional factors that may be considered in assessing the efficiency of the market of CyberGuard stock: "(1) the capitalization of the company; (2) the bid-ask spread of the stock; and (3) the percentage of stock not held by insiders (the 'float')." *Krogman*, 202 F.R.D., at 474 (citing *Serfaty*, 180 F.R.D. at 423). These factors weigh in favor of a preliminary determination of market efficiency for purposes of class certification in this case.

### 1. Capitalization

Market capitalization, "calculated as the number of shares multiplied by the prevailing share price, may be an indicator of market efficiency because there is greater incentive for stock purchasers to invest in more highly capitalized corporations." *Krogman,* 202 F.R.D. at 478 (citing *O'Neil,* 165 F.R.D. at 503). The record shows that Cyber-Guard's market capitalization fell around the median average of market capitalization for other NASDAQ computer companies. *See* Sarin Rebuttal, ¶ 21. In *Krogman,* the district court found that market capitalization in the top sixty percent of a sample group weighed slightly in favor of a determination of market efficiency. This Court finds that the Plaintiffs' evidence that CyberGuard falls within the median market capitalization tends to suggest market efficiency rather than weigh against the application of the "fraud on the market" theory.

### 2. Bid-ask Spread

The next factor, the bid-ask price, is "the difference between the price at which current stockholders are willing to buy the stock and the price at which current stockholders are willing to sell their shares." *Krogman,* 202 F.R.D. at 478. In *Krogman,* the central case upon which the Defendants' rely, the district court found that a bid-ask price of 5.6% was extremely high, suggesting market inefficiency. *Id.* In the instant case, Defendants' expert found that CyberGuard's average daily relative bid-ask spread for the Class Period was 2.44%. Bruce Report, ¶ 9. This is significantly lower than the high bid-ask price of 5.6% found to suggest market inefficiency in *Krogman.* Accordingly, this factor weighs in favor of market efficiency in the case at bar.

### 3. Percentage of Stock held by Insiders

Finally, courts have considered the percentage of stock held by insiders as a consideration in determining efficiency. This percentage, known as the "float," is helpful regarding market efficiency as "insiders may have information that is not yet reflected in stock prices, the prices of stocks that have greater holdings by insiders are less likely to accurately reflect all available information." *Krogman,* 202 F.R.D. at 478 (internal

quotation omitted). Accordingly, a high percentage of insiders holding stock and a relatively low float weigh against a finding of market efficiency. *Id.* In the present case, CyberGuard insiders only held five (5) % of the shares outstanding. Bruce Report, ¶ 11; Sarin Rebuttal, ¶ 30. As a result, Cyber-Guard maintained a large float which suggests market efficiency.

In sum, an examination of the Complaint as well as Plaintiffs' evidence suggest that the Plaintiffs have preliminarily demonstrated that they have satisfied most of the factors discussed above suggesting that the market for CyberGuard stock was efficient and that the presumption of reliance applies in this case. As the Court finds that the reliance presumption is applicable to this case, common questions of law predominate any individual questions. Accordingly, the predominance requirement of Rule 23(b)(3) has been established.

### 2. Superiority of Class Action

Moreover, the Court concludes that the Plaintiffs have also satisfied the second prong of Rule 23(b)(3). As noted above, Rule 23(b)(3) requires that a class action under this section must be superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3). It would be impracticable to permit individual suits by each shareholder of CyberGuard stock during the relevant class period as it is alleged that there are thousands of purchasers who have been injured by the alleged wrongful acts of the Defendants. *See Walco,* 168 F.R.D. at 337 (holding that class action is a superior method of adjudicating securities fraud claims where there are approximately 1,500 class members because it would be extremely costly and unnecessarily duplicative for a class member to try the action). Accordingly, this Court finds that a class action is the superior method of resolving the securities fraud issues in this matter.

### F. *Notice pursuant to the PSLRA*

Finally, Defendants argue that the Plaintiffs failed to give proper notice to all potential lead plaintiffs pursuant to the early notice provisions of the PSLRA. Specifically,

Defendants assert that early notice regarding this class action did not include sufficient information regarding the claims asserted and did not cover all potential lead plaintiffs (i.e. notice omitted eleven (11) months from the proposed class). Due to the Plaintiffs' alleged failure to abide by PLSRA early notice requirements, Defendants request this Court to deny Plaintiffs' Motion for Class Certification.

This Court concludes that Defendants' arguments regarding PSLRA early notice requirements are unavailing. The PSLRA requires:

Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—

(I) of the pendency of the action, the claims asserted therein, and the purported class period; and

(II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u–4(a)(3)(A)(i). The purpose of the early notice requirement is "to provide class members with sufficient information about the suit and inform class members of their right to move to be appointed lead plaintiff so they can make an informed and reasoned judgment about whether they should seek lead plaintiff status." *California Public Employees' Retirement Sys. v. Chubb Corp.*, 127 F.Supp.2d 572, 576 (D.N.J.2001) (citations omitted).

Plaintiffs in this action appropriately and timely filed a Motion for Appointment as Lead Plaintiffs after notice was provided under the PLSRA early notice requirements. As previously noted, Plaintiffs filed a first class action complaint on August 25, 1998. Several securities cases against CyberGuard involving similar legal and factual issues also were filed in the Southern District of Florida. These similar securities cases were transferred and consolidated before the undersigned on September 28, 1998 and October 21, 1998. On August 23, 1999, Plaintiffs filed an Amended Consolidated and Class Action Complaint incorporating the legal and factual issues of the various cases against Cyber-Guard. Prior to the filing of the Amended and Consolidated complaint, Plaintiffs and counsel in the first filed class action published early notice advising members of a class period beginning on or after October 7, 1997. *See* Plaintiff Exh. 20 (EM 016—EM 121).

Thereafter, and subsequent to the filing of the Consolidated and Amended Class Action Complaint, several named plaintiffs and members of the class moved to become Lead Plaintiffs of the instant matter in accordance with the requirements of the PSLRA. *See* Motion for Appointment of the Proposed CyberGuard Lead Plaintiffs and Approval of Lead Counsel [D.E. 46]. Defendants did not oppose the Motion for Appointment of Lead Plaintiffs and Lead Counsel. *See* Response [D.E. 52] ("Defendant do not oppose the appoint of the 'Proposed CyberGuard Lead Plaintiffs' or their counsel as lead plaintiffs or lead counsel in these consolidated lawsuits"). The Defendants also did not oppose or object to the Plaintiffs' early published notices. Rather, the Defendants simply requested the Court to reserve their right to oppose any issues regarding certification of any class of plaintiffs. *Id.* Upon reviewing the parties' arguments and briefing, the Court entered an Order appointing Lead Plaintiffs and approving their selection of counsel on November 23, 1998.

It is widely recognized that the intent of the PSLRA is "to have the 'most adequate lead plaintiffs' appointed as soon as practicable in the litigation, and that filing of subsequent actions alleging different class periods [does] not require publication of new notice or start a new 60–day period for the filing of motions to appoint lead plaintiff or lead counsel." *In re Sunbeam Securities Litigation*, No. 98–8258–CIV, 1998 WL 1990884 at *2 n.2 (S.D.Fla. Dec. 4, 1998) (agreeing with holding in *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *4, 1997 U.S. Dist. Lexis 11866, at *14 (N.D.Ill. Aug. 11, 1997)); *see also Greenberg v. Bear Stearns & Co., Inc.*, 80 F.Supp.2d 65 (E.D.N.Y.2000)(holding that the PSLRA "does not mandate, nor does it

suggest, that a Court approved lead plaintiff must re-publish a notice of the purported class after an amended complaint is filed"). In the instant case, this Court approved Lead Plaintiffs and counsel as soon as practicable in the litigation after the consolidation and amendment of the class action complaint. Selection of Lead Plaintiffs and counsel was ordered without objection from the Defendants in this action. The Court appointed the Lead Plaintiffs, including Miller, Govic, Brown, and Meshulam, without prejudice to the defendants' right to challenge adequacy, typicality, and ultimate certification of the class action.

As discussed herein, the Defendants have been provided full opportunity to challenge the adequacy and typicality of the Lead Plaintiffs in opposition to class certification. Upon a careful and thorough consideration of Defendants' arguments, this Court has found that Lead Plaintiffs Govic, Brown, and Meshulam are appropriate class representatives for the *entire* class period set forth in the Second Amended Complaint from November 7, 1996 to August 24, 1998. As a result, Defendants' arguments that Plaintiffs' early notices prejudice the class members are without merit.

Further, the Defendants have not provided, nor has this Court located, any cases which hold a class may not be certified where Plaintiffs did not inform individuals of the entire proposed class period in early PSLRA notices. On the contrary, relevant case law has held that additional notice is not required where the original complaint is amended to include, in part, an extension of the class period. *See e.g., Greenberg,* 80 F.Supp.2d at 69 (holding that the PSLRA "does not mandate, nor does it suggest, that a Court approved lead plaintiff must re-publish a notice of the purported class after an amended complaint is filed"). As a result, the Plaintiffs are not required to re-file notices for Lead Plaintiffs at this stage of the ligation since the class period was extended upon amendment and consolidation of various

cases. This is especially the case where the Defendants did not object to such notices in opposition to Plaintiffs' Motion for Appointment of Lead Counsel or at any time after the various amended complaints were filed with the Court. Accordingly, the Court finds that Defendants' arguments regarding alleged violations of the PSLRA early notice requirements are insufficient to defeat class certification.[17]

Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Amended Motion for Class Certification [D.E.] is GRANTED. The class certified includes all investors who acquired common stock of CyberGuard Corporation between November 7, 1996 and August 24, 1998 and were damages be the purchase of such stock. The class is certified against Defendants CyberGuard and individual Defendants Carberry, Murray, Wheeler, and James for violations of the Exchange Act. It is further

**ORDERED AND ADJUDGED** that the class representatives are Lead Plaintiffs Brown, Govic, and Meshulam. The parties shall submit supplemental memoranda regarding substitution of Lead Plaintiff Miller *on or before August 28, 2002.* Response are due *on or before September 11, 2002* and any Replies due *on or before September 18, 2002.* The parties shall address (1) whether substitution is necessary and/or whether the class may proceed with the three (3) above-named class representatives; (2) whether the parties agree to a substitution of Plaintiff Miller with Key Access and; (3) whether additional discovery is necessary. It is finally

**ORDERED AND ADJUDGED** that pursuant to Federal Rule of Civil Procedure 23(c)(2), the Court shall direct notice to members of the class after the completion of briefing regarding named Plaintiff Miller and resolution of substitution of such named Plaintiff by separate order.

---

**17.** The cases cited by Defendants are distinguishable and inapposite as the cases involve objections to notices in the context of Motions for Appointment of Lead Plaintiffs and Counsel. *See King v. Livent, Inc.,* 36 F.Supp.2d 187 (S.D.N.Y.

1999) (denying motion for appointment as lead plaintiffs based on inadequacy of plaintiffs' early notice under the PSLRA); *In re Lucent Tech., Inc. Sec. Litig.,* 194 F.R.D. 137, 147–48 (D.N.J. 2000) (same).